[No. 2490. Decided October 6, 1897.]

R. T. SMITH *et. ux.*, *Respondents*, v. J. H. ALLEN *et. al.*, *Appellants.*

VENDOR'S LIEN — ACTION TO RECOVER PURCHASE PRICE — TRANSITORY ACTION.

Real property conveyed by an absolute deed is not subject to a vendor's lien for unpaid purchase money, where no such lien has been reserved by the deed or by any agreement between the parties.

An action to recover unpaid purchase money due upon a conveyance of real estate is a transitory one, and cannot be made local by the prayer of the complaint that the sum due be declared a first lien on the premises and that they be sold to satisfy the same, since, in the absence of a reservation of a vendor's lien by agreement between the parties, such lien is not recognized in this state.

Appeal from Superior Court, Clallam County.—Hon. J. G. McClinton, Judge. Reversed.

*J. C. Allen*, for appellants.

*George C. Hatch*, for respondents.

The opinion of the court was delivered by

Reavis, J.—Action instituted by plaintiffs (respondents) against defendants (appellants) to enforce a vendor's lien upon certain real property in Clallam county. In substance, the complaint is that respondents sold and conveyed by absolute deed to appellants eighty acres of land situated in Clallam county, and that defendants promised and agreed to pay the sum of $1,000 in installments from time to time as they were able and as plaintiffs needed the same; that the agreement to purchase was in writing, and that defendants paid on the contract the sum of $635.62, and refused to pay the balance. The complaint concludes with a prayer for judgment against the defendants for the balance of the sum alleged to be due on the purchase price of the land, and that it be declared a first lien on the premises as a vendor's lien, and that the specified premises be sold to satisfy the same.

Defendants at the time of the commencement of the action were all residents of King county, and the defendants Allen each appeared and demurred to the complaint and filed a motion to change the venue to King county. Sufficient affidavits showing the residence of all the defendants in King county, and also affidavits of merits were at the same time filed. The superior court denied the motion for a change of venue on the ground that the suit was one to enforce a vendor's lien for balance due of the purchase price of the premises conveyed by respondents to defendant Allen. After the demurrer was overruled, the defendants answered, and a trial was had and judgment for plaintiffs with a decree establishing a vendor's lien and ordering a sale of the premises before mentioned.

The superior court evidently overruled the motion for a change of venue on the ground that the action was local because of the enforcement of a vendor's lien. Sections

158, 159 and 161, 2 Hill's Code (Bal. Code, §§ 4852, 4853, 4855), control the venue of the action. The defendants having, at the proper time, shown they were residents of King county, the motion to change the venue was not addressed to the discretion of the court, but was a matter of right with the defendants.

The question of jurisdiction to try the action is determined not by the remedy requested, but by what the facts alleged in the complaint entitle plaintiffs to receive; and thus the question presented for decision here is whether real property which has been conveyed by absolute deed is subject to a vendor's lien for unpaid purchase money where no such lien has been reserved by the deed or by any agreement between the parties. No case in this state has been called to our attention where the question has necessarily arisen and been decided heretofore. It is true the expression "vendor's lien" has been used perhaps a number of times by the court, but where the lien itself, as the foundation of a right, was not necessarily involved. The policy deduced from the uniform course of legislation in this state, relative to conveyances of real estate and the title thereto, has been to enlarge the scope of the recordation of all instruments affecting real estate. Only conveyances by deed are recognized, and incumbrances are required to be placed of record. This is true of agreements subjecting real property to voluntary liens or incumbrances as in the case of mortgages, and is also required in that large class of claims of lien which are authorized by statute. Evidently the policy of our registry acts is against secret liens. The vendor's lien originally, as recognized in England, was devised by courts of equity to enforce the rights of a grantor of real property against the grantee who might remain in possession after the execution of an absolute deed, and yet refuse to pay the purchase price, or any balance remaining due thereon.

The inability to subject land by process of law to execution for a simple contract debt was recognized by the English chancellors as requiring a remedy. · Hence the invention of a lien in favor of the vendor for the purchase price promised to be paid for land. The vendor's lien, at the time it originated and was enforced, was also less inconvenient and injurious against innocent purchasers or incumbrancers of land in England than in this country. The general policy of the law in England did not facilitate commerce in land as here. The law there was rather favorable toward holding landed estates together, and did not assume to make transfers easy. Thus real estate was usually improved and regularly cultivated, the ownership long established and well known, and the transfers comparatively few and usually better known than among our people. Here land is essentially a subject of trade and commerce, transfers are easy and simple, and purchasers and incumbrancers look to the record for their information. The vendor's lien in England seems to have been involved in some uncertainty and its limitations not very well understood, until the case of *Mackreth v. Symmons*, decided in 1808, by Lord ELDON, 15 Ves. 329. In this case the learned chancellor thought, " the doctrine is probably derived from the civil law as to goods." The case, however, reviews the doctrines and the source of its origin and the reasons and authorities by which it is supported. The final grounds upon which it has been rested are natural equity, the supposed intention of the parties, and a trust arising out of the unconscientiousness of the vendee's holding the land without paying the price.

Mr. Chief Justice GIBSON of Pennsylvania, in *Kauffelt v. Bower*, 7 Serg. & R., 64 (10 Am. Dec. 428), meets this argument thus:

" The implication that there is an intention to reserve a lien for the purchase money, in all cases where the parties do not, by express acts, evince a contrary intention, is, in almost every case, inconsistent with the truth of the fact, and in all instances, without exception, in contradiction of the express terms of the contract, which purport to be a conveyance of everything that can pass."

But the theory that a trust arises out of the unconscientiousness of the purchaser would construe the non-performance of every promise, made in consideration of a conveyance of property to the promissor, into a breach of trust; and would attach the trust, not merely to the purchase money which he agreed to pay, but to the land which he never agreed to hold for the benefit of the supposed *cestui que trust.*

The earliest cases upon this subject in England were decided long after the first colonial settlements in this country. Lord ELDON, in *Mackreth v. Symmons, supra,* himself said:

" It has always struck me, considering this subject, that it would have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequences of his want of caution; or, to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would, and in what it would not, exist."

But felt himself obliged to declare, as the result of all the authorities, that it was clear that different judges would have determined the same case differently. The most plausible foundation of the English doctrine would seem to be that justice required that the vendor should be enabled by some form of judicial process to charge the land in the hands of the vendee as security for the unpaid purchase money.

The doctrine of vendor's lien has never been affirmed by the supreme court of the United States except where established by the local law. In *Bayley v. Greenleaf*, 7 Wheat. 46, Mr. Chief Justice MARSHALL observes:

" It is a secret, invisible trust, known only to the vendor and vendee, and to those to whom it may be communicated in fact. To the world the vendee appears to hold the estate, divested of any trust whatever; and credit is given to him, in the confidence that the property is his own in equity, as well as law. A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien."

Says Mr. Justice GRAY, in *Ahrend v. Odiorne*, 118 Mass. 261 (19 Am. Rep. 449):

" The decisions in the courts   .  .  .   in favor of the doctrine, which are collected in the notes to 2 Sugden on Vendors (8th Am. ed., c. 19), suggest no reasons and afford no grounds why we should now for the first time adopt in this commonwealth a doctrine which has never been supposed by the profession to be in force here; which would introduce a new exception to the statute of frauds; which, as experience elsewhere has shown, tends to promote uncertainty and litigation; and which appears to us to be unfounded in principle, unsuitable to our condition and usages, and unnecessary to secure the just rights of the parties. If no third person has acquired any rights in the land by *bona fide* attachment or conveyance, the original vendor may secure payment of the debt due him for the purchase money by the usual attachment on mesne process. If any third person has acquired rights in the property, there is no reason why equity, any more than the common law, should interpose to defeat them."

Under our statutes the vendor may obtain his judgment for the purchase money, or any part thereof, which imme-

diately becomes a lien of record upon the land sold, and under execution he may have the land sold in satisfaction of his judgment, and that, too, freed from any homestead or other claim of exemption. Thus the reason for the maintenance of the lien of the vendor is gone, and the rule has never been applicable to our condition. The adoption of the common law of England by legislative enactment in this state adopts so much of that law as is applicable to our condition, and the lien devised in favor of the vendor by the English chancellors was inapplicable to the legislation and existing conditions in this state. *Ahrend v. Odiorne, supra; Simpson v. Mundee,* 3 Kan. 172; *Brown v. Simpson,* 4 Kan. 76; *Greeno v. Barnard,* 18 Kan. 518; *Kauffelt v. Bower,* 7 Serg. & R. 64 (10 Am. Dec. 428); *Hiester v. Green,* 48 Pa. St. 96 (86 Am. Dec. 569); *Edminster v. Higgins,* 6 Neb. 265; *Philbrook v. Delano,* 29 Me. 410; *Peck v. Culberson,* 104 N. C. 425 (10 S. E. 511); *Richards v. Shingle Co.,* 74 Mich. 57 (41 N. W. 860); *Dean v. Dean,* 6 Conn. 285; *Arlin v. Brown,* 44 N. H. 102; *Perry v. Grant,* 10 R. I. 334; *Wragg v. Comptroller General,* 2 Desaus. Eq. 509; *Frame v. Sliter,* 29 Ore. 121 (45 Pac. 290); 2 Jones, Liens, § 1061.

The change of venue from Clallam to King county should have been granted the defendants. The cause is reversed with directions to the superior court to proceed in conformity to this decision.

SCOTT, C. J., and DUNBAR, ANDERS and GORDON, JJ., concur.