[No. 19468. *En Banc.* July 15, 1926.]

LOUISE C. PACHECO *et al., Appellants,* v. M. C. MELLO, *by his Guardian ad litem Ray Farrell, Respondents.*[1]

[1] TRUSTS (10)—EXPRESS TRUSTS—EVIDENCE TO ESTABLISH— —PAROL EVIDENCE. An express trust in real estate, deeded by absolute deed, cannot be shown by parol evidence; and letters and preliminary contracts indicating no more than that the grantee was indebted to the grantors, and containing no description or definite reference to the land, are not sufficient to take the same out of the operation of the statute of frauds, Rem. Comp. Stat., § 8745.

[2] SAME (22)—CONSTRUCTIVE TRUSTS—BREACH OF ORAL AGREEMENT —EVIDENCE TO ESTABLISH. A constructive trust in lands through fraud in taking the title, for the purpose of making a sale for the grantors, is not sufficiently shown, as against the grantee, after he had become insane, by the fact that he recorded the deeds and assumed to be the owner, and by the testimony of two disinterested parties that the agreement was that he was not to record the deed and took title only for the purpose of making a sale and that he was merely trusted with the title and agreed to the conditions at about the time the deed was made; since the bad faith of the grantee at the time of receiving the deed must be shown by clear and convincing testimony. (MITCHELL and FULLERTON, JJ., dissenting.)

[3] VENDOR AND PURCHASER (137)—VENDOR'S LIEN—RIGHT TO. There being in this state no vendor's lien for the unpaid purchase price of land, alternative relief therefor cannot be awarded, upon failure to prove an express or constructive trust in favor of the plaintiff.

[1]Reported in 247 Pac. 927.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered January 22, 1925, in favor of the defendants in an action to set aside a deed, tried to the court. Affirmed.

*Louis A. Merrick (Platt & Sanford,* of counsel), for appellants.

*Coleman & Fogarty* and *Clarence J. Coleman,* for respondents.

PARKER, J.—The plaintiffs, Louise C. Pacheco and John Pacheco, her son, commenced this action in the superior court for Snohomish county, praying that two certain deeds of conveyance executed, one by Mrs. Pacheco and one by her and her son, John Pacheco, purporting to convey the same quarter section of land in that county to the defendant, Mello, the latter deed being intended as supplemental to the former one, "be set aside, annulled and in all things held for naught," and that they be decreed the owners of the land, freed from all claim of right or title therein of the defendants. The action was commenced and has been waged by the plaintiffs upon the theory that Mello, by virtue of these deeds, holds legal title to the land in trust for them and now has no right to retain such legal title. The case being of equitable cognizance, it proceeded to trial before the court sitting without a jury. At the close of all of the evidence introduced in behalf of the plaintiffs, counsel for the defendants moved for dismissal upon the merits. This motion was sustained by the trial court upon the ground, as evidenced by its oral opinion, announced following the argument thereon and embodied in the statement of facts, that whatever trust was created attending the making of the deeds was intended to be, and was, an express trust, and, not having been sufficiently evidenced in

writing, its existence was therefore not legally proven, as required by our statute of frauds. A formal decree of dismissal was entered accordingly, from which the plaintiffs have appealed to this court.

On August 22, 1922, appellants, Mrs. Pacheco and her son, John Pacheco, were the owners of the land in question; it having been by patent granted by the United States to Cosme Pacheco, their deceased husband and father, and inherited by them from him. On that day, Mrs. Pacheco executed and delivered to respondent, Mello, a deed of conveyance, absolute in form, purporting to convey to him the land in question. Later, apparently on the following day, both appellants executed and delivered to Mello another deed of the same import for the same land, which deed was also dated August 22, 1922, and was intended to supplement the one executed by Mrs. Pacheco on that day, because that deed was not signed by John Pacheco. An alleged agreement and understanding, existing with reference to the trust purpose of the first deed at the time of its making, is set up in appellants' complaint as follows:

"That at the time of the execution and delivery of said instrument, the female plaintiff intended to confer upon the defendant Mello, power to sell said lands for a consideration of $16,000, and no less, and to turn such consideration over to the plaintiffs, and that it was then and there agreed between the female plaintiff and the defendant Mello, that the female plaintiff should execute and deliver to him an instrument in form a deed, for the purpose of enabling the defendant Mello to sell said lands to obtain the consideration and to turn over such consideration to the plaintiffs. And that it was expressly agreed at such time that such instrument should never be recorded, that no revenue stamps should be affixed thereto, and that the defendant Mello would hold said lands for the plaintiffs, unless the same could be sold for the sum of $16,000 net to

the plaintiffs, and that any sum in excess of that amount for which said lands should be sold should become the property of the defendant Mello, as compensation for the making of said sale."

This is followed in the complaint by an allegation that the last signed deed from both appellants to Mello was attended by the same trust agreement. While both deeds recite and acknowledge receipt of a consideration of ten dollars, it is alleged in the complaint that there was no money consideration for their execution. All of these allegations are denied by the answer of respondents, Mello and his guardian, so that appellants were put to their proof as to all questions of fact touching the making of the alleged trust agreement. Both of the deeds were executed and delivered in Nevada, where both of the appellants live. Soon thereafter Mello brought the deeds to Snohomish county in this state, and soon thereafter caused them to be recorded in the office of the auditor of that county. He thereafter dealt with the land as his own, taking physical possession of it, mortgaging it to secure a loan of one thousand dollars to himself, paying off that mortgage loan and again mortgaging it to secure another one thousand dollar loan to himself, which encumbrance is still on the land. This mortgage lien, however, being concededly held by an innocent *bona fide* mortgagee, it is not here challenged by appellants.

On January 7, 1924, Mello was duly adjudged to be insane, and since then has so remained under disability, being a ward of the state. Soon after such adjudication, respondent, Farrell, was duly appointed and qualified as guardian of the estate of Mello, and was, for that reason, made a defendant in this action as such guardian. Mello remained in the physical possession of the land, farming the cleared portion of it and living upon it as his home, until he was adjudged insane and

became a ward of the state. Appellants both continue to live in Nevada.

We now notice with some particularity writings claimed by counsel for appellants as sufficiently evidencing the charging of Mello's legal title to the land with an express trust, that is, as evidencing Mello holding the bare legal title in trust for appellants. We notice these writings in the order of their dates. On February 15, 1923, Mello wrote to Mrs. Pacheco saying in his signed letter:

"I received your papers, but I have to read them over so I can understand everything. I advertised the land twice so as to get some money for you, but nobody has answered yet. The last time I advertised 120 acres for sale, and intended to keep the 30 acres for myself. You do not need to be afraid that I will sell any land without your knowledge as people here require an abstract and I cannot give one. . . . Your uncertainty causes me much worry and I would like to have you plan to come over here next summer and see how things look. I recorded the papers on the land that you gave me when I first came over, as I did not want to lose my time and work. . . . If you and John could come over, we could fix up the house a little and you can see the garden I put in."

We are not advised as to the nature or contents of the papers Mello here refers to as having been received from Mrs. Pacheco. The above quoted language does seem to suggest that Mrs. Pacheco had some claim against Mello with reference to some land not described. Aside from want of identity of the land, this quoted language of Mello could as well have reference to some amount owing Mrs. Pacheco for some undescribed land or otherwise as to Mello holding any land in trust for her.

On February 23, 1923, Mello again wrote to Mrs. Pacheco, saying in his signed letter:

"I got your letter of March 7th enclosing two money orders dated January 2nd which I am returning to you.

"They were made payable to yourself and you never signed your name on the back, consequently I could not use them to help pay the taxes as you desired. Again they were payable at Carson City, Nevada, instead of Arlington, Washington, so that would cause me some expense to have got them collected; but I paid the taxes and used all the money I had to do it.

"I can't see, however, how I would be justified in signing mortgage and note and paying interest as set out in the same. I do not understand that that was our agreement at all.

"I have done an awful lot of work on the place and spent a lot of money and I am going to do everything that I agreed to and you may rest assured of that."

Here again there is not only no description of any land, but no land whatever is mentioned, unless the word "place" means land. We are not advised as to the nature or contents of the letter of Mrs. Pacheco to which this letter of Mello seems to be an answer. This letter, like the first one above quoted from, can as well have reference to some obligation which Mello owes to Mrs. Pacheco, apart from a trust obligation, as to the claimed trust obligation. Indeed, the reference to the "mortgage and note" rather strongly suggests a claimed money obligation, rather than a trust obligation.

On May 29, 1923, Mello gave to a prospective purchaser a signed option for the purchase of approximately fifty-three acres of the land, appropriately describing it, at a contemplated sale price of $6,300. In this option are these words:

"It is further agreed between the parties hereto that of the purchase price herein to be paid, the sum of $5,300 shall be paid into the Citizens State Bank at Arlington for the benefit of Louise Pacheco and John

Pacheco, her son, of Carson City, Nevada, the former owners, and the sum of $1,000 and interest to the Citizens State Bank, Arlington, to release and discharge a mortgage given by the first party to the said Bank on said property . . ."

This, it seems clear to us, does not evidence any holding of the land in trust for appellants. It, at most, only evidences a probable obligation on the part of Mello to pay appellants the sum of $5,300. As to what such probable obligation may be for, we are still in the dark. It is just as probable that it was for a debt owing from Mello to appellants, whether upon the purchase price of the land in question, or upon some other obligation, is of no consequence. On July 16, 1923, Mello wrote to appellant, John Pacheco, saying in his signed letter, after telling of his efforts to sell the land,

"You are far away, but I tell you everything just like you were my brother and your mother my mother."

This letter, as we read it, contains nothing more than a bare suggestion of some money obligation of Mello to appellants, and also suggests a somewhat intimate friendship between Mello and appellants. On July 31, 1923, Mello again wrote to appellant, John Pacheco, saying in his signed letter, in part as follows:

"I'm nearly thru haying. Have a new barn 16x30 ft. I think I'll have enough hay this winter for two cows and my horse, better than six tons. Also have a nice little patch of carrots and mangels to feed them.

"I want to know how I can pay $640 interest with a couple of cows.

"Hope you and your mother come up here to live so we can settle everything the best we can.

"I ask a big price for the land but I can't help it, because I've spent a lot of money on it. . . . If you and your mother fix the price right on the ranch, maybe it would be easier to sell it. I will sell all but 33 acres. . . . I want to get the land under culti-

vation. This is the reason I'd like to have you folks
come up so you can see for yourselves. Then you will
believe me. This ranch will never be sold before you
sign your name to it.  .  .  ."

Here again no land is described, and, even if the ref-
erence in this letter be considered as being to this land,
we find little therein other than an express desire and
effort on the part of Mello to sell the land, to the end
that he may raise money to satisfy some obligation,
the nature of which is not disclosed. On November 16,
1923, Mello again wrote to appellant, John Pacheco,
saying in his signed letter:

"The way I feel now, I would like to give you back
the whole ranch with all my work, if you will sign a
note for the mortgage and pay my fare to go home to
see my father."

[1] We see nothing in this letter suggesting any
holding of the land by Mello in trust for appellants.
In the above noticed written statements of Mello, we
have every written word which can have any possible
bearing on the question of the claimed trust being suf-
ficiently evidenced in writing. In none of these writ-
ings, other than in the option to sell a portion of the
land, is there any sort of a description of any land
that would answer the legal requirements of a convey-
ance of real property, and that particular writing
seems to negative, rather than affirm, any trust. We
think, also, there is no expression, in any of these no-
ticed portions of the writings, evidencing, with any sort
of certainty, any such a trust obligation resting on
Mello, as is claimed by appellants. To our minds, these
writings come nearer suggesting some money obliga-
tion, rather than some trust obligation, resting upon
Mello in favor of appellants.

It has become the settled law of this state, in har-
mony with the generally accepted rule in this country,

that an express trust in real property cannot rest in parol, but must be evidenced in writing. Among our decisions holding to this view of the law we note particularly the following, because they have to do with claimed express trusts in favor of grantors as against their direct grantees, which is this case: *Spaulding v. Collins,* 51 Wash. 488, 99 Pac. 306; *Kinney v. McCall,* 57 Wash. 545, 107 Pac. 385; *Kalinowski v. McNeny,* 68 Wash. 681, 123 Pac. 1074; *Arnold v. Hall,* 72 Wash. 50, 129 Pac. 914, 44 L. R. A. (N. S.) 349. In this last cited case, Judge Gose, speaking for the court, said:

"Our statute, Rem. & Bal. Code, § 8745, provides: 'All conveyances of real estate or of any interest therein, and all contracts creating or evidencing any encumbrance upon real estate shall be by deed.' The cases cited settle the law in this state in this, that a resulting trust can, and that an express trust cannot, be proven by parol testimony, the latter being within the prohibition of the statute quoted."

This quoted statute has remained unchanged since territorial days, and may now be found as § 10550, Rem. Comp. Stat. [P. C. § 1909]. We make this quotation from *Arnold v. Hall, supra,* to render it plain that this is our statute of frauds touching the necessity of an express trust being proven in writing.

Now as to what such writing shall contain: It seems plain that it shall, at least, identify the property with the same certainty as is required in a deed of conveyance. This, of course, would sufficiently appear in a deed of conveyance in which the trust was expressed by the grantor, but this trust has never in any manner been expressed in writing by the appellant grantors in their deeds, or in any other writing; nor has this alleged trust been acknowledged by Mello, the grantee in the deeds, by any writing signed or otherwise executed by him at the time of his receiving the

deeds; nor were any of the writings relied upon by appellants as evidencing acknowledgment by Mello of the trust, made or signed by him until approximately six months and more after the execution and delivery of the deeds to him. Surely, any acknowledgment by him at that late day evidencing his holding the land in trust, must, to be effectual, be evidenced by a writing or writings made by him in which the land is identified with such certainty as would be required in a deed of conveyance by him. None of these writings signed by him, as we read them, clearly expresses any trust obligation resting upon him with reference to the title to any land, and none of these writings describes any land either within themselves or by certain reference to any other writings; except, of course, the option contract describes a portion of the land, but, as we read that writing, it contains no evidence whatever pointing to Mello's trust ownership of the lands so described, or any other land. We feel, therefore, constrained to hold, and do hold, that the writings, relied upon by appellants as sufficiently evidencing an express trust, do not accomplish that end, in that they do not sufficiently describe or identify any land; neither do they sufficiently specify any trust relationship between Mello and appellants. The rule as to the degree of certainty, both as to the identity of alleged trust property and as to the nature of the trust, is well stated in 1 Perry on Trusts (5th ed.), § 83, as follows:

"The same principles of construction apply to trusts proved by this description of evidence as in other cases; and the objects and nature of the trust must always appear from such writings with sufficient certainty, and also their connection with the subject-matter of the trust. Indeed, courts require demonstration on the latter point."

See, also, 26 R. C. L. 1183.

Manifestly, the required degree of certainty as to the identity of the property and the nature of the trust, which must be evidenced in writing, is the same whether evidenced by declaration of the grantor in the grant or by acknowledgment of the trust by the grantee. *Taft v. Dimond,* 16 R. I. 584, 18 Atl. 183; *Renz v. Stoll,* 94 Mich. 377, 54 N. W. 276; *Pittman v. Pittman,* 107 N. C. 159, 12 S. E. 61, 11 L. R. A. 456. We conclude that it does not appear, by any competent written evidence introduced in behalf of appellants upon the trial of this case, that any express trust with reference to the land in question exists as against Mello in favor of appellants. It must, therefore, now be held that no express trust exists in their favor.

[2] Contention is here made in behalf of appellants that, in any event, they are entitled to have these deeds set aside and the title to the land quieted in them, upon the theory that, in taking the deeds as he did, Mello committed such a fraud upon appellants as entitled them to have the deeds set aside. This contention is advanced, manifestly, as an alternative ground of relief, invoked by appellants to be considered by the court in the event the express trust theory failed to afford them relief. In other words, the contention is that, if there was no provable express trust, then there arose at the time of the making of the deeds a constructive trust growing out of deceit constituting such fraud then practiced by Mello as against appellants, by which he acquired the legal title in trust for them. There is some uncertainty as to whether or not appellants should now be heard to advance this theory, since it seems that the trial was waged by appellants principally upon the theory of express trust, and that the trial court disposed of the case seemingly wholly upon that theory. Appellants' complaint does not plead facts as a separate cause of action looking to relief

upon the theory of constructive trust, though it does contain some allegations which, by inference, may be considered as claiming, in the alternative, relief upon that ground. However, we will notice upon the merits this alternative contention.

Mello being insane and appellants seeking relief for their own benefit, and thereby being parties "in interest" and "to the record" in the action, neither of them could testify in his or her own behalf as to the transaction had with Mello upon which they seek recovery. This, because of the language of § 1211, Rem. Comp. Stat. [P. C. § 7722], as follows:

"In an action or proceeding where the adverse party sues or defends as . . . or as the guardian or conservator of the estate of any insane person . . . , then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased or insane person . . ."

So we cannot have the benefit of the testimony of either of the appellants as to their transaction with Mello or as to statements made by him. The only evidence in this record, which could possibly be construed as proving a fixed purpose in the mind of Mello to unlawfully acquire and deprive appellants of their land at the time they conveyed the land to him, which, of course, must be the fraud, if any, giving rise to a constructive trust as claimed by appellants, is the causing of the recording of the deeds by Mello soon after their delivery to him, his assumption of ownership of the land, and certain statements of Mrs. Pacheco only, not of John Pacheco, made at the time of the delivery of the deeds, as testified to by Miss Stewart, the Nevada notary who took Mrs. Pacheco's acknowledgment to the deed signed by her alone, and Mr. Sanford, an attorney of Nevada, Miss Stewart's employer, in their depositions

Miss Stewart's testimony, reduced to narrative form, is in part as follows:

"On August 22, 1922, I was in the employ of Platt & Sanford, attorneys at Carson City, Nevada. On that day I saw the plaintiff, Louise C. Pacheco, at the office of Platt & Sanford. She and Mello then came to the office together. They requested me to draw a deed of certain property from the plaintiff, Louise C. Pacheco, to the defendant Mello. Mr. Sanford being absent for the day and the property being in the state of Washington, I stated that I did not want to draw the deed, and that I never did draw deeds in the absence of Mr. Sanford and without his direction. The plaintiff Louise insisted upon having me draw the deed, saying that everything would be all right and that I could do it as well as anyone; that Mello was going to the state of Washington to try to sell this property for her and that she wanted him to have the deed to show to persons who might buy the property, and that the deed was not to be recorded when he went to Washington because she was not selling the property to him. I then prepared the deed. Mrs. Pacheco there said, in the presence of Mello, as to the relations between herself and Mello, that he was like her own son and she trusted him as though he were her own son. They stated many times during the conversation concerning the deed that its only purpose was for Mello to have something to show to parties in Washington in case he made a sale of the property. Mello stated he would take the deed to Washington with him and would leave right away and try to sell the property for Mrs. Pacheco for $16,000. She said the deed was not to be recorded. He said the deed was not to be recorded. I asked Mrs. Pacheco, in the presence of Mello, if she knew how many revenue stamps to put on the deed. Mrs. Pacheco stated, in the presence of Mello, no stamps were to be put on the deed because she was not selling the property to Mello and he was not recording the deed. No consideration passed."

This last statement, manifestly, means no consideration passed in the presence of Miss Stewart. This,

of course, is not sufficient to overcome the presumption of the passing of a consideration as expressed in the deed, and there is no other competent evidence upon that question. There is no evidence that John Pacheco was present at this conversation between Mrs. Pacheco, Mello and Miss Stewart. This testimony of Miss Stewart is, in substance, the whole of the competent evidence relating to any conversation then taking place between Mello and Mrs. Pacheco touching the purpose of the execution and delivery of that particular deed. John Pacheco, it is to be remembered, did not join in the execution of that deed and was not a party to that transaction. Mr. Sanford's testimony relates wholly to what occurred between the parties the day following, and, reduced to narrative form, is in part as fol·lows:

·"On August 23, 1922, the plaintiff Louise and the defendant Mello came to our office. They asked Miss Stewart to acknowledge the signature of John Pacheco to a deed from Louise C. Pacheco and John Pacheco to the defendant Mello, bearing date of the 22nd day of August, 1922, and purporting to convey (here follows description of the land, being the land in question). John Pacheco was not present. Miss Stewart refused to take the acknowledgment of John Pacheco in his absence. I asked Louise Pacheco and Mello what was the matter. In the presence of Louise Pacheco and myself, Mello then stated: 'I am going to sell her property in Washington for her and she has deeded it over to me. John won't come up here to sign the deed.' (This manifestly means John would not come up to acknowledge the deed since he had already signed it.) In the presence of myself and Mello, Louise Pacheco said: 'I made out this deed to him. He is just like a son to me. I trust him with everything. He is going to Washington right away.' Louise Pacheco, in the presence of Mello and myself, said to me: 'The deed won't be recorded.' Mello then said: 'I won't record the deed. I am only going to hold it so that

I can show people that I can sell the land for her.' In the presence of Mello, Louise Pacheco said to me: 'I am to get $16,000 for the land if he sells the land. John and me will then make a good deed to the land. This paper will not give the land to him. Mello is honest. He is just like my son. I trust him all the time. When he gets the money, then we make deeds for the land to the persons who buy it.' I was not acting as attorney or counsel for either party.''

This is, in substance, all that was shown as to what occurred on August 23, 1922. We have no competent evidence as to what transactions or statements were had or made between the parties at that time other than this testimony of Miss Stewart and Mr. Sanford, and the deeds themselves, and we are to remember that John Pacheco was not present on either of these occasions.

We have recognized the rule in *Rozell v. Vansyckle*, 11 Wash. 79, 39 Pac. 270, and in other decisions, that a promise of the nature here attributed to Mello as made in bad faith, that is, bad faith at the time of its making, with the then present intent not to carry it out, and thereby acquire title to real property, may, at the suit of the grantor, warrant a court of equity in decreeing the grantee as holding the legal title in trust for the grantor. Manifestly, however, proof of such bad faith, existing in the mind of the grantee at the time of receiving the conveyance, must be very clear and convincing to overcome the intention of the parties as evidenced in an absolute deed of conveyance.

The evidence in this case, we think, is not clear and convincing of Mello's bad faith or intention to unlawfully deprive appellants of this land at the time he received these deeds. The law seems well settled that a mere subsequent breach of any such promise will not give rise to any trust interest in the property in favor of the grantor, whatever money obligation may arise

therefrom and rest upon the grantee to the grantor.
because of failure on the part of the grantee to ful-
fill some promise made in connection with, or as a part
of, the transaction resulting in the conveyance of the
property to him.  Now, viewing the letters of Mello
above noticed as having some bearing on this con-
structive trust theory, wholly apart from the express
trust theory, as to which we have found them to be in-
sufficient as written evidence of such a trust, they seem
to, at least in some measure, negative, rather than af-
firm, any intent on the part of Mello entertained by
him at the time of receiving the deeds, to not fulfill his
oral promise then made.  Viewing the evidence from
all angles, we think it is not proven, with that clearness
and certainty required by law, that Mello acted in bad
faith at the time of the delivery of the deeds to him.
Therefore, no constructive trust was then raised as
against Mello in favor of appellants.

[3]  Counsel for appellants make another seemingly
alternative contention; and that is, that, since there
is added to their specific prayer for relief, looking to
the establishment of a trust in favor of them, a prayer
for general relief, they are, in any event, entitled to
relief by way of establishing a vendor's lien against
the land for $16,000, or for the amount that may be
found to be a balance of any unpaid purchase price of
the land.   There is no evidence in the record upon
which any such relief could be granted with any degree
of certainty whatever as to the extent thereof, even if
there were in this state such a thing as a vendor's lien,
which this court has decided there is not, in *Smith v.
Allen,* 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R.
A. 82.

In this connection, we deem it proper to here observe
that, while we cannot see our way clear to reverse the
judgment of the trial court and award appellants any

relief either upon the express trust theory, the constructive trust theory or the vendor's lien theory, the disposition of this case in the trial court and here shall not be considered as in any way *res judicata* of any money claim sounding in contract or tort, growing out of this or any other transaction between Mello and appellants having to do with the execution of these deeds or the assertion of ownership and occupancy of the land by Mello.

The decree is affirmed.

TOLMAN, C. J., HOLCOMB, ASKREN, MACKINTOSH, and MAIN, JJ., concur.

MITCHELL, J. (dissenting)—In my opinion the appellants' proof established an express trust, and the motion to dismiss, made at the close of that evidence, should have been denied.

At the trial, after the written instruments referred to in the majority opinion had been admitted in evidence, the trial court permitted oral evidence on behalf of the appellants concerning the understanding between them and Mello at the time the deeds were executed and delivered at Carson City, Nevada. That testimony was given by disinterested persons to the effect that Mrs. Pacheco said Mello was going to the state of Washington to try and sell this property for them and that she wanted him to have the deed to show persons who might want to buy, that the deed was not to be recorded when he went to Washington, because she was not selling the property to him; that he was to sell it for $16,000 and all he got over that sum would belong to him; that no revenue stamps were to be put on the deed, because she was not selling the property to Mello and he was not to record the deed; and that Mello stated that that was right. This specific understanding was had at the time of the making and deliv-

ery of each of the deeds. No money passed between the parties. This testimony was received over the objection of the respondent.

The majority opinion says that "soon thereafter Mello brought the deeds to Snohomish county in this state and soon thereafter caused them to be recorded in the office of the auditor of that county. He thereafter dealt with the land as his own, taking physical possession of it, mortgaging it to secure a loan of $1,000 to himself, paying off that mortgage loan and again mortgaging it to secure another $1,000 loan to himself, which incumbrance is still on the land." That statement is correct with the qualification, I think, that his dealing with the land as his own was not in denial of his obligations to the appellants. The view of the majority, as I understand the record, is established only by the letters written by Mello and an option he gave another to purchase a part of the land, and yet, further on in the majority opinion in discussing those same instruments, it is said they possess a "want of identity of the land." That is, they prove he took possession of the land deeded to him and yet they do not identify the land.

The tract of land contained one hundred and sixty acres and the price at which it was to be sold was $16,-000 or $100 per acre, for the appellants. In his letter of February 15, 1923, to Mrs. Pacheco, Mello stated that he had tried twice to sell the land "to get some money for you," the last time he tried to sell not all of it, as he intended to keep thirty acres for himself. His purpose to keep thirty acres was not inconsistent with the beneficial ownership of his grantors provided, of course, he paid the agreed price for it. He said, "You do not need to be afraid that I will sell any land without your knowledge as people here require an abstract and I cannot give one." Just another way of admitting

that, notwithstanding the deed to him that he had already put of record, he knew the property did not belong to him but to them, without whose knowledge he would make no sale of it. He further said in that letter, "If you and John could come over we could fix up the house a little and you can see the garden I put in." Why should appellants help improve the property, if they had no interest in it, or be interested in a garden on land not belonging to them?

His letter of February 23, 1923, admits receipt of money orders she had forwarded to pay taxes on the land. It is against common experience that one should attempt and intend to pay taxes on another's land. He further said, "I can't see, however, how I would be justified in signing mortgage and note and paying interest as set out in the same." It is perfectly plain that, after appellants learned Mello was unable to sell the place, had recorded the deed contrary to the agreement, was living on the place and "did not want to lose my time and work," they desired and asked that he give them a mortgage in protection of their rights, he already holding the legal title of record. But, as they had the right to seek a change in their contract relations, so he had the right to refuse to do so, as he did, by saying "I do not understand that that was our agreement."

The written option signed and given by Mello to a third party on May 29, 1923, to purchase a specifically described part of the land covered fifty-three acres at the price of $6,300 and provided that $5,300 should be paid into a specified bank for these appellants and the remaining $1,000 to the Citizens State Bank of Arlington in satisfaction of a mortgage given by Mello to that bank on the land in question. Running true to the terms of his agreement with the appellants, he provided in his contract with the third party for the payment

to appellants of $100 per acre for the fifty-three acres, the remaining $1,000, his profit, to be applied in the discharge of his personal mortgage obligation.

In his letter of July 31, 1923, he spoke of a new building and crops on the place. He again declined to pay $640 interest, which happens to be the legal rate on $16,000, which they were to have upon his sale of the place for them. He wanted them to come up so they could fix things up the best they could, clearly intending, or informing them, that he meant to claim pay for his improvements, closing his letter with the significant statement, "this ranch will never be sold before you sign your name to it." Again, why should they sign their names to a conveyance upon a sale by him of his own land?

On November 16, 1923, he wrote "The way I feel now, I would like to give you back the whole place with all my work. If you will sign a note for the mortgage and pay my fare to go home to see my father." Another practical admission that the land was not his, but at the same time preferring a charge on account of his work which he was disposed to cancel for a moderate consideration. The mortgage he referred to evidently was his mortgage to the bank. Less than two months after the date of the last letter Mello was adjudged insane, and shortly thereafter this action was commenced.

I have thus discussed the written evidence with reference to the two aspects of the case, first as to whether that evidence is sufficient to obviate the statute of frauds, and second, if so, whether it is sufficient, together with the oral evidence, to make out a case for the appellants.

It is easy and very common, in view of the statute of frauds, for courts and other writers to say that an express trust in real property cannot rest in parol, but

must be evidenced in writing. In the most of the cases so holding the facts were in parol. Such was the situation in each of the four cases decided by this court that are cited in the majority opinion. The rule stated in 1 Perry on Trusts and Trustees (5th ed.), § 83, quoted in the majority opinion speaks of the general rule, while 26 R. C. L., p. 1183, referred to in that opinion, also speaks generally of the "essential elements" of an express trust.

It is not necessary that the word "trust" or "trustee" be used. Perry on Trusts and Trustees (5th ed.), vol. 1, § 82. Nor will it do to accept without qualification the general statement, so often found, that the writings must speak with certainty of the nature of the trust. In *Railroad v. Durant,* 95 U. S. 576, it was said:

"All the deeds but one designate the appellee [grantee] as 'trustee,' without setting forth for whom or for what purpose. Parol evidence was admissible to show these things."

Browne on the Statute of Frauds (5th ed.), in discussing the subject of express trusts, at § 111, says:

"Where there is any written evidence showing that the person apparently entitled is not really so, parol evidence may be admitted to show the trust under which he actually holds the estate. In the case of *Cripps v. Jee,* an estate being subject to certain encumbrances, the grantor mortgaged the equity of redemption, by deeds of lease and release, to two persons of the name of Rogers, as purchasers for a consideration stated in the deed, the real intention of the parties being that the Rogerses should be mere trustees for the grantor, and should proceed to sell the estate, and after paying the encumbrances should pay the surplus money to the grantor. In the books of account of one of the Rogerses, there appeared an entry in his handwriting of a year's interest paid to an encumbrancer on the estate, on account of the grantor, and other

entries of the repayment of that interest to Rogers by the grantor, and there was also evidence of a note and bond given by the Rogerses to a creditor of the grantor, in which they stated themselves to be trustees of the estate of the grantor. Lord Kenyon held that this written evidence being inconsistent with the fact that the Rogerses were the actual purchasers of the equity of redemption, farther evidence by parol was admissible to prove the truth of the transaction. Parol evidence has also been admitted by Chancellor Kent to repel the inference of a trust from certain letters and accounts, in a case where the writings were of a loose and ambiguous character, the principle being however carefully reserved, that if the written proof had been clear and positive, it could not have been rebutted by parol."

Perry on Trusts and Trustees (5th ed.), vol. 1, § 82, speaking of express trusts in connection with the statute of frauds, says:

"The statute of frauds will be satisfied if the trust can be manifested or proved by any subsequent acknowledgment by the trustee, as by an express declaration, or any memorandum to that effect, or by a letter under his hand, or by his answer in chancery, or by his affidavit, or by a recital in a bond or deed, or by a pamphlet written by the trustees, or by an entry in a bank-deposit book; in short, by any writing in which the fiduciary relation between the parties and its terms can be clearly read. And if there is any competent written evidence that the person holding the legal title is only a trustee, that will open the door for the admission of parol evidence to explain the position of the parties, as where there are entries in the books of the grantee of payments made by him to or on account of the grantor, which payments were consistent only with the fact that the grantee took in trust, he was decreed to be a trustee."

Further in the same section, it is said:

"The trust thus proved, however late the proof, will relate back to its creation."

26 R. C. L., p. 1202, § 41, speaking of express trusts, under the subdivision "Evidence to Establish Trusts" says:

"Where there is some written evidence showing the existence of a trust the door is thereby opened to the admission of parol evidence to show the truth of the transaction."

It is not necessary to notice either all or many of the cases, English and American, relied on by the authors in support of the rule announced. They are referred to in their writings. One case may be noticed, the case of *Johnson v. Calnan,* 19 Colo. 168, 34 Pac. 905, 41 Am. St. 224. It was a suit against a grantee to obtain a reconveyance of twenty acres of land on the ground of a breach of contract and trust on the part of the grantee to convey certain portions of the land to a railway company. Under date of January 5, 1887, acknowledgment dated January 10, 1887, the owners of a forty acre tract, plaintiffs in the action, gave Johnson, the defendant in the action, a power of attorney to subdivide and sell the property and account to the donors for all moneys received according to the terms of a written agreement between them of that date. The written agreement referred to, between the landowners as parties of the first part and Johnson as party of the second part, provided that the first parties had bargained and sold to Johnson the forty acres in question; it recited that Johnson had agreed to resell the land and apply the proceeds to the use of the first parties until the sum of $6,500 had been paid, balance remaining to belong to Johnson; it fixed the price at which lots should be sold, the proceeds of which should be divided among the parties of the first part until the sum of $6,500 had been paid, and again stated that the balance should belong to Johnson. There were

other recitals in the agreement not necessary to be mentioned here. About the same time, on January 6, 1887, the same parties, as owners, executed and delivered to Johnson, trustee, a deed of conveyance of a twenty acre tract, the reconveyance of which was sought by the suit. No reference was made in the deed to any conveyance to be made to the railway company of any part of the land. On the trial of the case the written instruments referred to were put in evidence and oral evidence was allowed to show the conditions of the trust. The defendant admitted he had done nothing toward complying with the conditions of the alleged trust, and contended that the deed to him of the twenty acres conveyed title absolute. The trial court admitted parol evidence and, upon the whole case, decided in favor of the plaintiffs and ordered a reconveyance of the twenty acres. Johnson appealed. In the decision of affirmance it was stated that the two questions in the case were as to the sufficiency of the complaint to warrant a reconveyance, and whether or not the findings and decree were sustained by competent and sufficient evidence. Then after stating that both questions must be answered in the affirmative, unless the statute of frauds and perjuries compelled a different answer, it was said:

"Section 6 of the statute reads as follows:

" 'Sec. 6.   No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent, thereunto authorized by writing': Gen. Stat., § 1515; Mills' Ann. Stats., § 2019.

"Under the foregoing statute it has been held that the existence of a direct or express trust in lands cannot be established by parol evidence: *Von Trotha v. Bamberger,* 15 Colo. 1. But where there is some written evidence showing the existence of a trust, the door is thereby opened to the admission of parol evidence to show the truth of the transaction: Hill on Trustees, 61, 62; 2 Sugden on Vendors, 14th ed., 437; Browne on Statute of Frauds, 3d ed., § 111; 1 Perry on Trusts, § 78, *et seq.; Bohm v. Bohm,* 9 Colo. 106.

"By their special warranty deed of January 6, 1887, plaintiff conveyed the twenty-acre tract of land to defendant naming him 'trustee' in the deed. Plaintiffs also produced further written evidence of the trust, as follows:

" 'Florence, 3, 23, 1888.

" 'Received of Chas. B. Toll, Esq., one thousand dollars, check No. 2489, part payment on block B, Carbondale, Colo.

'Wm. E. Johnson, Trustee.'

"On the offer of this receipt in evidence 'it was conceded by defendant that he made a contract to sell a portion of the twenty-acre tract to Mr. Toll, and that said receipt was given on account thereof. It was further admitted that neither Mr. Toll nor the said contract had any connection with the Aspen and Western Railway Company.' It was also 'conceded by defendant that nothing has been done toward complying with the conditions of the alleged trust herein set up by the plaintiff.' . . .

"The word 'trustee' inserted after the name of the grantee in the deed executed by plaintiffs, and also affixed by defendant to his signature to the receipt, would seem to indicate something more than a mere *descriptio personae;* as a description of the person, the word thus used is too general to amount to any thing; as a description it does not identify any one. In our opinion, the word 'trustee,' under the circumstances, indicates the intention of the parties that the grantee was to take the title, not in his individual capacity, but in trust for another, though the name of his *cestui que trust* is not disclosed by the deed. In *Railroad Co. v.*

*Durant,* 95 U. S. 576-579, where a certain person was designated as 'trustee' in certain deeds 'without setting forth for whom or for what purpose,' it was held that 'parol evidence was admissible to show these things.' The authorities upon this point are not altogether clear or uniform; but we are of opinion that the *Durant* case announces a proper rule for the determination of the present controversy: *Shaw v. Spencer,* 100 Mass. 393; 97 Am. Dec. 107; 1 Am. Rep. 115; *Brown v. Combs,* 29 N. J. L., 36; *Selden's Appeal,* 31 Conn. 548; 2 Pomeroy's Equity Jurisprudence, §§ 1009, 1010.''

According to this rule, which rests upon sound reason, the written evidence in this case opened the door to parol evidence, not to contradict the deed, but to bind the grantee to a trust which he undertook in accepting it, upon the supposed incompleteness of the deed. It is in obedience to the rule that good conscience, after technical, though legal, objections have been substantially overcome, shall not be further deterred in the discovery and establishment of the truth of the transaction.

As to the sufficiency of the evidence, there is no occasion, I think, for any further analysis of it. It is clearly sufficient, unrebutted, to warrant the relief demanded by the appellants.

FULLERTON, J., concurs with MITCHELL, J.