[No. 25963. Department Two. March 20, 1936.]

GEORGE NICOLAI, as Receiver, Appellant, v. I. O. DESILETS et al., Respondents.[1]

Wayne W. Keyes, for appellant.

Lloyd & McGavick and M. McElroy, for respondents.

[1]Reported in 55 P. (2d) 604.

HOLCOMB, J.—This action was instituted by the receiver of The Sixth Avenue Sun Drug Co., Inc., a corporation, to have set over to him the lessees' interest in a certain five-year lease, on property theretofore occupied by the corporation, made by I. O. and C. V. Desilets, as lessees, and Austin Lyons and Mable Lyons, his wife, as lessors, all of whom were made parties defendant. Lyons and wife answered and cross-complained, asking that the lease be declared void because of a misunderstanding, it being thought by the lessors that they were leasing to the party who was then occupying the premises.

The trial court dismissed the actions at the close of plaintiff's and cross-complainants' cases upon the ground that the evidence in each instance was insufficient to sustain either cause of action. Judgment was accordingly entered and after the denial of motions for a new trial the receiver alone appealed.

Appellant's contention is that the right and privilege of the corporation to occupy the premises described in the lease is a valuable right, one of the chief assets of the corporation, and that, by reason of the fiduciary relationship existing between the corporation and the Desilets, the lease taken by them in their own names amounts to a lease taken for the benefit and on behalf of the corporation. In other words, appellant contends that a constructive trust exists in favor of the corporation, and the court should have decided, upon the evidence introduced, that appellant had made a *prima facie* case.

A constructive trust has been defined as the device used in equity to compel those who unfairly hold a property interest which they obtained or retain by reason of unjust or unconscionable means to convey that interest to, or to hold it for, another to whom it

justly belongs; or, as Mr. Justice Cardozo, in *Meinhard v. Salmon,* 249 N. Y. 458, 164 N. E. 545, said:

"A constructive trust is then the remedial device through which preference of self is made subordinate to loyalty to others."

Such a trust is not the product of the intention of the parties. It is created regardless of intention and, of course, directly against the intention of a defendant. Hence, it is premised upon inequitable conduct or an invasion of rights arising from the relationship of the parties. 3 Pomeroy's Equity Jurisprudence, 2370; 3 Bogert's Trusts and Trustees, 1451.

Viewing the case in the light of the above principles, we recite the facts as established, either by admissions or proof, from the record.

Defendants I. O. and C. V. Desilets had been copartners carrying on a drug store business under the firm name and style of Sun Drug Co. and occupied the premises at 2713-2715 Sixth avenue, in Tacoma, under a five-year lease from Lyons and wife. During the lease term, this partnership became financially involved and, by their attorney, M. McElroy, obtained the benefits of the Federal bankruptcy act, which unquestionably terminated all leases. Thereafter, McElroy incorporated a company known as The Sixth Avenue Sun Drug Co., Inc., operating at the aforementioned location, in which Mrs. Josephine Desilets, mother of I. O. and C. V. Desilets, was the principal stockholder. M. McElroy, attorney for the corporation, had one share, and a Miss Hebick, as secretary-treasurer of the corporation, was also a minor stockholder. The reason for its organization, as made by the principal stockholder, Mrs. Josephine Desilets, was that "the boys" (I. O. and C. V. Desilets) didn't have enough money. She took no part in the management of the business, the two sons, who were paid sal-

aries, having full charge, doing the buying, and one or both signed all checks.

In April, 1933, becoming financially involved, this corporation gave to one James P. Welker, as trustee for the benefit of certain creditors, a chattel mortgage on the stock and fixtures to secure the payment of an indebtedness of $9,016.72. Subsequent defaults in payments secured by this mortgage having occurred, the attorney for the mortgagee called a meeting of the creditors, for whose benefit the mortgage was given, for April 8, 1935, urging I. O. and C. V. Desilets to be present. C. V. Desilets attended with attorney Mc-Elroy and there stated, in effect, that the corporation did not have the money to pay the amount in arrears and asked that further discussion be postponed for one week to allow time to try to raise sufficient funds.

Two days later, April 10, 1935, I. O. and C. V. Desilets, as copartners doing business under the firm name and style of Sun Drug Co., and without the knowledge of the corporation, obtained a five-year lease, dated April 1, 1935, from Lyons and wife, owners of the building then occupied by the corporation. It may be stated here that the first lease made to the copartnership had expired, and a second lease, made by them on a month-to-month basis, had also expired in January, 1935, and thereafter there was no formal lease, but the same monthly rental continued.

At the expiration of the requested one week, C. V. Desilets and attorney McElroy, who claimed to be representing the corporation, met with Welker, the mortgagee, and his attorney, at which time they were informed of the unsuccessful attempt to raise the money and that Welker was at liberty to protect his interests as he might see fit. McElroy, in answer to a question as to whether or not he, as a stockholder, had any complaint against the copartnership obtaining the last

lease, stated that the corporation was defunct.

On April 18, 1935, a general receiver was appointed, who took charge of the affairs of the corporation and later effected a sale of its assets for six thousand dollars, conditioned, however, upon the acquisition of a lease of the store building, which had been and was then occupied by the corporation, at 2713-2715 Sixth avenue. The evidence *prima facie* established that, without this lease, the assets would only bring about fifteen hundred dollars; and that, if the lease to the Desilets had not been made, the landlords would have made a new lease, upon satisfactory terms, to the purchaser of the corporation assets.

Perhaps the most common application of the constructive trust doctrine, as related to renewal of leases, occurs in partnership dealings.

3 Pomeroy's Equity Jurisprudence, § 1050, says:

"One member of a partnership cannot, during its existence, without the knowledge and consent of his copartners, take a renewal lease, in his own name or otherwise, for his own benefit and to the exclusion of his fellows, of premises leased by the firm or occupied by them as tenants. A lease so taken by a partner inures to the benefit of the whole firm; it is regarded as a continuation of or as 'grafted on' the old lease; a trust will be impressed upon the leasehold estate; equity will treat the partner as a trustee for the firm, and if necessary and possible, will compel him to assign the renewal lease to it; . . ."

See, also, *Knapp v. Reed,* 88 Neb. 754, 130 N. W. 430, 32 L. R. A. (N. S.) 869.

As a general rule, the same principle applies to all fiduciaries, as stated in 16 R. C. L. 904, § 412:

"The doctrine of implied trusts arising out of renewals applies to fiduciaries of practically every description. . . . Thus the doctrine is extended to confidential clerks and agents secretly obtaining leases to themselves of the premises occupied by their princi-

pals, and where the managing agent of a theater, who by reason of his employment had learned the methods of conducting the business and had become familiar with its value and future possibilities, at the expiration of a lease in the name of his principal, privately secured a renewal thereof to himself, the court held him to be a trustee with respect to the lease for his principal. Likewise, where a clerk employed by a firm of warehousemen, whose lease of the warehouse was about to expire, procured a renewal of the lease to himself for the purpose of establishing himself in the warehouse business, it was held that his employers were entitled to compel a conveyance of the renewal lease to themselves and to an injunction against interference with their possession and use of the premises.''

It is further stated in 26 R. C. L. 1249, § 95:

''The cases are very numerous in which courts of chancery have recognized the equitable expectancy of renewal attached to a leasehold estate so far as to decree that new leases, granted upon the supposition of a right of renewal, should inure to the benefit of those interested in the old lease, and that persons standing in a fiduciary or quasi fiduciary relation to the old lessees should, when they have secured renewals to themselves, be regarded as constructive trustees for the first lessees.''

That employees are fiduciaries is pointed out in 21 R. C. L. 824, § 9, saying:

''The employee or agent is bound to the exercise of the utmost good faith toward his employer or principal; . . .''

and in § 10, 825:

''The employee is duty bound not to act in antagonism or opposition to the interests of the employer.''

The theory of respondents is that, as the company never had a formal lease, but only subleased the property, and as the company was no longer solvent, it would be fallacious to say that the corporation lost

any valuable asset or right. The latter contention is answered by the testimony that, without a lease, the corporation would realize only about fifteen hundred dollars, but with the lease six thousand dollars. The first contention is untenable because of the very basis of the principle of constructive trust.

The most apt statement which fits the facts in the case at bar is found in 3 Bogert on Trusts and Trustees 1548, as follows:

"Another illustration of the rule of equity which requires trustees and other fiduciaries to be strictly loyal to their cestuis, and which uses the constructive trust as a medium for righting the wrong of disloyalty, is to be found in the field of the renewal of leaseholds held by the fiduciary. If T is trustee of a lease for ten years covering business premises and is operating an established business there for the trust, and T takes a lease of the premises to commence at the end of the ten-year lease and in his own favor, the cestui may have T charged as a constructive trustee of that new leasehold for the benefit of the cestui."

It is true the corporation may have had no lease, but it was occupying the premises and paying rental therefor. Whatever superior rights in the property the Desilets boys had or claimed at any time, followed into the corporation for its partial, substantial benefit, the business of which they operated and managed.

1 Perry on Trusts and Trustees (7th ed.), 358, states the rule applicable as follows:

"Whenever one person is placed in a relation to another, by the act or consent of that other, or the act of a third person, or of the law, so that he becomes interested for him or with him in any subject of property or business, he will in equity be prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has been associated."

442

It is declared in *Mitchell v. Read*, 84 N. Y. 556:

"It is said to be a universal rule that no one who is in possession of a lease, or a particular interest in a lease, which is affected with any sort of an equity in behalf of third persons, can renew the same for his own use only, but such renewal must be considered as a graft upon the old stock."

The rule is almost universal that an agent must not profit at his principal's expense in matters relating to his agency.

Respondents cite no authorities whatever. We can find none contrary to those above cited.

A fiduciary relationship existed between the corporation and those it hired to manage its business. In obtaining the new lease for themselves, they clearly acted against the best interest of their principal, as shown from the fact that, if the corporate business could be sold as a going concern with a right to the purchaser to occupy the same premises, approximately four times as much could be realized on the sale. The action of the Desilets boys was antagonistic to and inconsistent with their positions as managers of the corporate business. Their conduct resulted in an advantage to them at the expense and to the detriment of their employer.

The corporation organized, which took over the partnership business, was, apparently, to all intents and purposes, a family affair. If it be conceded that the corporation continued under the lease made by the partnership, the argument that the copartners sublet to the corporation only strengthens appellant's contention that the leasing was for the benefit of the corporation. Thus there was created a new, private benefit and advantage over the interest and to the detriment of the corporation for which the sons worked. While holding fiduciary positions toward the corpora-

tion, they acquired property interests which otherwise would have inured to the benefit of the corporation.

A *prima facie* case having been made by appellant, the trial court erred in dismissing the action at the close of his case.

The judgment is reversed, with directions to the trial court to proceed further in conformity herewith.

MILLARD, C. J., BEALS, MAIN, and BLAKE, JJ., concur.