[No. 35678. Department One. August 24, 1961.]

BANGASSER & ASSOCIATES, INC., *Appellant, v.* DONALD HUGH HEDGES *et al., Respondents.*\*

*John Spiller,* for appellant.

*Engst & Phelps,* by *Edward T. Engst,* for respondents.

FOSTER, J.—The appellants, Bangasser and Associates, sued to quiet title to a tract of four hundred fifty-one acres of timber in Chelan county, and appeal from an adverse judgment impressing a trust and quieting title in respondent. The appellants' assignment, that some of the findings of fact are not supported by the evidence, is refuted by the record, and factual disputes are no longer resolved upon appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183.

The appellants' contention that the findings of fact do not support the conclusions of law necessitates a statement

\*Reported in 364 P. (2d) 237.

of the circumstances. Richard Scales and his partner, Erwin Myhre, purchased the property on contract in 1957 for eighteen thousand dollars. They logged during the latter part of 1957 until early 1958 when Myhre withdrew from the partnership. He sold his interest to Scales and took a mortgage back for twenty-five hundred dollars, half of which matured September 1, 1958.

Scales continued logging throughout the summer of 1958. Beset by equipment breakdowns, high labor costs, and other financial pressures, Scales turned to his friend and experienced business adviser, Paul Bangasser and Associates. Letters were exchanged in mid-August. Scales indicated a desire to abandon the project, but Bangasser urged him not to do so and promised:

". . . We will do everything we can do to help. Have no solution in mind at this moment but will go to work on it.

"Walking away is not the answer. We must find a way to save it. . . ."

Thereafter, within three days, on August 22, 1958, Scales appeared in Bangasser's Seattle office, where, under Bangasser's direction, Scales assigned the contract and executed a deed, the ostensible purpose of which was to transfer everything to Bangasser. Bangasser did not record the conveyance until May 6, 1959. No additional consideration was mentioned even though through stumpage payments Scales had reduced the contract balance to about four thousand dollars, increasing his equity to nearly fourteen thousand dollars.

With Bangasser's knowledge, Scales continued his logging for several weeks. He also resumed logging after the snow melted in the following spring.

Meanwhile, Bangasser attempted to solve the financial tangle. He unsuccessfully attempted to secure a moratorium upon the Erwin Myhre payment on September 1, 1958. He negotiated with the attorney for Scales' vendors for the purpose of determining the precise contract balance and preventing forfeiture. Bangasser tendered four hundred dollars as an interest payment, which amount, however, was returned. He also expended $105.63 for a local

assessment and an insurance premium. In addition, sometime before the end of 1958, he made an oral promise to pay Scales five thousand dollars if and when he sold the property.

Bangasser listed the property with several brokers, advertised it in the papers, and, in the spring of 1959, had the timber cruised. The property was appraised at $23,580 and a consultant advised that the river frontage property had even greater value for residential use. On June 22, 1959, Pope & Talbot, Inc., took an option on the property at $42,845, and exercised it on July 21, 1959.

The trial court found that Scales did not have Bangasser's business sagacity, and that he was of flighty disposition, which weaknesses were known to Bangasser. The court also found that Scales never intended to give up the property, but that the assignment was for security purposes to cover possible advances by Bangasser in straightening out Scales' affairs. Such was the basis for the conclusion that Bangasser held legal title in constructive trust for Scales.

The constructive trust is equity's antidote for the pain wrought by freedom of contract between persons of unequal ability. Cardozo described it as "the formula through which the conscience of equity finds expression" (*Beatty v. Guggenheim Exploration Co.*, 225 N. Y. 380, 386, 122 N. E. 378), and as "the remedial device through which preference of self is made subordinate to loyalty to others." *Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1.

The rule stated in 2 Pomeroy's Equity Jurisprudence, § 1053, was adopted in *Rozell v. Vansyckle*, 11 Wash. 79, 83, 39 Pac. 270:

" 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, *taking advantage of one's weakness or necessities*, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably

entitled to the same; . . . and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.' "

Accord: *Kausky v. Kosten,* 27 Wn. (2d) 721, 179 P. (2d) 950; *Nicolai v. Desilets,* 185 Wash. 435, 55 P. (2d) 604; *Seventh Elect Church in Israel v. First Seattle Dexter Horton Nat. Bank,* 162 Wash. 437, 299 Pac. 359; *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927.

■ There was a constructive trust. Scales was in financial distress and apparently unable to work out of it by his own ingenuity. Assuming an irrevocable assignment was intended by both parties, Bangasser could easily be said to have taken advantage of Scales' weakness or necessity, but we need not go that far. There is considerable doubt the parties actually intended an outright assignment. Scales continued in possession and continued his logging operations. Bangasser negotiated with Scales' creditors in an effort to put off overdue payments, not to settle them, and always with a view to save *Scales'* investment. Moreover, he offered, long after the assignment, to pay five thousand dollars in event he found a buyer for the property. This offer indicates that the disposition of the property was not clearly settled by the written assignment. Moreover, the consideration for the assignment, that is the assumption of the existing liabilities without any reference to Scales' fourteen thousand dollar equity in the contract, strongly indicates the unequal competence and bargaining power of the parties. The $42,845 offer less than a year later makes such conclusion inescapable.

The unequal position plus the lack of any clear-cut intention to consummate an assignment support the judgment impressing a constructive trust upon Bangasser which is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and OTT, JJ., concur.