## HASKELL et al. v. McCLINTIC–MARSHALL CO. et al.

(Circuit Court of Appeals, Ninth Circuit. April 16, 1923. On Petitions for Rehearing, May 16, 1923.)

No. 3953.

1. **Receivers ⬅78—Presentation of lien claims to receiver held unnecessary.**

Where a receiver for a building company, appointed in a suit to foreclose mechanics' liens against the building, was simply directed to take possession of the property and to employ necessary assistants to protect it pending the receivership, and had nothing to do with the administration of the estate, and suits against him were expressly authorized, it was not necessary that all lien claimants should first present their claims to the receiver before being permitted to foreclose their liens.

2. **Appeal and error ⬅955—Receivers ⬅78—Mode of establishing lien claims against property under receivership is within lower court's discretion.**

Where a receiver was appointed in a suit to foreclose a mechanic's lien, the mode of establishing the lien claims by suit or presentation of the claims to the receiver rested entirely within the discretion of the trial court, and that discretion is not subject to review on appeal.

3. **Arbitration and award ⬅8—General agreement to arbitrate does not oust courts of jurisdiction.**

A general agreement to submit controversies to arbitration does not oust the courts of jurisdiction over such controversies.

4. **Courts ⬅372(1)—Whether general arbitration agreement is valid is question of general law.**

Whether a general agreement to submit all controversies to arbitration and to abide by the award of the arbitrators is valid is a question of general law, on which the decisions of the United States Supreme Court, and not those of the state courts, are controlling in the federal courts.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Mechanics' liens ⊘⟹208—Waiver procured by fraud disregarded, without rescission of contract.**

Where materialmen were induced by fraud to enter into a waiver of their right to mechanics' liens, they can have the provision for waiver set aside on the ground of the fraud, without rescinding the entire contract, and can thereafter enforce their liens based on the contract; the rule that a party to a contract procured by fraud must rescind in toto, or not at all, not being applicable in such a case.

**6. Courts ⊘⟹366(18)—State decisions control as to whether mechanic's lien can be claimed for material manufactured, but not delivered.**

The question whether a mechanic's lien can be claimed for materials expressly manufactured to be used in the building, but not delivered to the building, is a question on which the decisions of the state court are controlling in the federal courts.

**7. Courts ⊘⟹370—Federal court must decide state question not decided by state court.**

Where the exact point presented to a federal court involving a state mechanic's lien law has never been determined by the Supreme Court of the state, it is the duty of the federal court to determine the question for itself as best it can.

**8. Mechanics' liens ⊘⟹48—Materials specially manufactured for building at request of owner entitle materialmen to lien; "furnished."**

Where the materialmen contract directly with the owner, and the material is manufactured and specially designed for the building, it is furnished, within contemplation of Rem. & Bal. Code Wash. § 1129, as soon as prepared and ready for delivery, and the owner cannot defeat the materialmen's lien therefor by a wrongful refusal to receive or accept the material.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Furnish.]

**9. Corporations ⊘⟹378—Common officers and stockholders held not to make one corporation agency for another, so as to entitle lien claimant to recover against both.**

The facts that a building company was organized by a bank to construct a building for the bank, and that the two corporations had the same officers and largely the same stockholders, do not make the building company a mere agency or instrumentality of the bank, so as to entitle lien claimants to recover against the bank, as well as against the company.

**10. Banks and banking ⊘⟹80(1)—Bank held not liable for liens incurred by construction company.**

Where a bank had caused the organization of a building company to construct a building for it, had conveyed its property to the building company, and invested its funds in the stock of the company, which later proved worthless, receiving nothing in return therefor, the lien claimants, who have had the benefit of the property conveyed and the advances made to the building company, have no equity entitling them to share in the distribution of the assets of the bank, after its insolvency.

**11. Vendor and purchaser ⊘⟹254(1)—Vendor's lien is unknown to law of Washington.**

Vendor's liens are unknown to the law of the state of Washington.

**12. Corporations ⊘⟹476(3)—Mortgage to naked trustee, assigned by him to secure antecedent debt, held void.**

A mortgage executed by a building company to a naked trustee to enable him to raise money for the building company, under which no advances were made by the trustee or by any other person, was null and void when assigned by the trustee to a bank to secure an antecedent debt owing to the bank, under Const. Wash. art. 12, § 6, prohibiting the issuance of corporate securities, except for money or property received or labor done.

---

⊘⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. **Mortgages** ☞267—**Assignment to bank commissioner of mortgage held not to discharge mortgage.**

Where a bank conveyed property with warranty to another corporation, which subsequently became insolvent, largely indebted to the bank, the state bank commissioner, in charge of the bank when it became insolvent, was under no obligation to discharge a mortgage existing against the property when the bank conveyed it, and hence the assignment of that mortgage to the bank commissioner did not operate to discharge it, and the bank commissioner is entitled to foreclosure thereof.

14. **Mechanics' liens** ☞239—**Payment on contract cannot be applied to damages for breach of contract after payment was made.**

A payment made on a contract to furnish materials for a building when the first materials had been furnished, and before any breach of the contract occurred, cannot be applied by the materialman to the payment of damages for a subsequent breach of the contract, but must be deducted from the value of the materials furnished for which a lien could be claimed.

15. **Mechanics' liens** ☞157(3)—**Grossly excessive claim defeats right to lien.**

A wide discrepancy between the value of materials actually furnished by a lien claimant and the value as laid in the lien claim, which was not the result of mere inadvertence or mistake, avoided the lien claim.

16. **Mechanics' liens** ☞55(3)—**Damages for breach of contract or profits not allowed, except as included in contract price.**

No lien will be allowed for damages for breach of contract or for profits, except such profits as are included in the contract price, where that price is the basis of recovery.

### On Petitions for Rehearing.

17. **Mechanics' liens** ☞48—**Materialman's lien not defeated by separate contract for installing material.**

The right to a lien for materials specially manufactured under contract, but not used because of owner's abandonment of work, was not waived by the fact that the materialman, on the same day such contract was made, entered into other contracts to install the fixtures manufactured by him and to do certain other work, for breach of which latter contracts he could have no lien; the contracts being each independent of the others.

Appeals from the District Court, of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by the McClintic-Marshall Company against the Scandinavian-American Building Company and others, to foreclose a mechanic's lien, in which Forbes P. Haskell was appointed receiver for the Building Company, and other lien claimants intervened. From a final decree disposing of the different claims and liens (281 Fed. 166), the complainant, the receiver, and certain defendants and interveners take separate appeals. Decree modified and affirmed, and case remanded for further proceedings, and petitions of Tacoma Millwork Supply Company and others for rehearing denied.

F. D. Oakley, Guy E. Kelly, and Thomas MacMahon, all of Tacoma, Wash., for Haskell and Duke.

Elmer M. Hayden, Maurice A. Langhorne and Frederic D. Metzger, all of Tacoma, Wash. (Gordon & Smith, of Pittsburgh, Pa., of counsel), for McClintic-Marshall Co.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edwin H. Flick and Charles H. Paul, both of Seattle, Wash., for Tacoma Millwork Supply Co.

Jas. W. Reynolds, and Peters & Powell, all of Seattle, Wash., for E. E. Davis & Co.

Charles P. Lund, of Spokane, Wash., and Davis & Neal, and L. R. Bonneville, all of Tacoma, Wash., for Washington Brick, Lime & Sewer Pipe Co.

Stiles & Latcham, of Tacoma, Wash., for Ben Olson Co.

R. S. Holt and Fitch & Arntson, all of Tacoma, Wash., for Far West Clay Co. and others.

Before GILBERT and RUDKIN, Circuit Judges, and DIETRICH, District Judge.

RUDKIN, Circuit Judge. The Scandinavian-American Building Company was incorporated under the laws of the state of Washington on the 18th day of November, 1919, for the purpose of constructing a 16-story office building upon three lots in the city of Tacoma. One of the lots was conveyed to the building company by Drury, the Tailor, Incorporated, by warranty deed, dated November 10, 1919, delivered February 9, 1920. The two remaining lots were conveyed to the building company by the Scandinavian-American Bank of Tacoma by warranty deed, dated February 25, 1920. The consideration for the last-mentioned conveyance was $350,000, payable in second mortgage bonds of the building company, to be delivered within four months from and after February 10, 1920. The lots conveyed by the bank were subject to a mortgage in the sum of $70,000 in favor of the Penn Mutual Life Insurance Company. On the 25th day of February, 1921, this mortgage was assigned by the insurance company to one Haskell, special deputy bank commissioner in charge of liquidation of the Scandinavian-American Bank of Tacoma, and is referred to in the record as the $70,000 mortgage. On March 10, 1920, the building company mortgaged all three lots to one Simpson to secure the payment of the sum of $600,000. Simpson was a mere trustee for the building company. This mortgage was later assigned by Simpson to the Scandinavian-American Bank on October 7, 1920, and is referred to in the record as the $600,000 mortgage.

The building company contemplated the execution of a second mortgage to secure second mortgage bonds in the sum of $750,000, $350,000 of which were to be delivered to the bank in payment of the purchase price of the two lots as already stated. The construction cost of the building was to be paid from the proceeds of the $600,000 mortgage, the proceeds of the sale of the balance or remainder of the second mortgage bonds, and the proceeds derived from the sale of the capital stock of the building company. Contracts for labor and materials were let, commencing early in 1920, and the work of construction continued, until suspended by the failure of the Scandinavian-American Bank early in 1921. Numerous lien claims were filed against the property, and McClintic-Marshall Company, one of the lien claimants, commenced a suit to foreclose. A receiver for the building company was later appointed in the foreclosure suit, and other lien claimants

were brought in or intervened. A final decree was entered disposing of the different claims and liens, and that decree is now before us for review. Some of the grounds urged for reversal are common to more than one of the parties, but all are believed to be included in the following statement:

First. The receiver for the building company contends that all lien claimants should have been required to present their claims to the receiver, and that foreclosure against the property while in the custody of the receiver should not have been permitted.

Second. Some of the contracts for material and labor contain a general arbitration clause, providing that any dispute growing out of the contracts shall be referred to three arbitrators, one appointed by each of the contracting parties, and the third by the two so chosen, and that a decision of any two shall be final and binding upon the parties. A failure to observe this provision of the contracts is urged in defense of the foreclosure suits.

Third. Some of the contracts for materials contain a provision waiving a lien, and agreeing not to file or claim the same, and this provision is also urged in defense.

Fourth. Some of the lien claimants claimed a lien for material and fixtures specially designed and manufactured for the building, but neither used therein nor delivered at the building for use. The denial of their claims is assigned as error.

Fifth. Some of the lien claimants contend that the building company was a mere agency or instrumentality of the bank, and that they are therefore entitled to a decree against the bank as well as against the building company.

Sixth. The supervisor of banks claimed a vendor's lien for the unpaid purchase price of the two lots conveyed to the building company, and also sought a foreclosure of the $70,000 mortgage and the $600,-000 mortgage. The ruling of the court denying a foreclosure as to either the lien or the mortgages is assigned as error.

[1, 2] 1. The first contention of the receiver of the building company is not well founded. To begin with, this was not a general receivership, to wind up the affairs of the building company. The receiver was simply directed to take possession of the property of the building company and employ the necessary assistants and caretakers to protect it pending the receivership. He had nothing whatever to do with the administration of the estate, and was little more than a caretaker himself. But, aside from this, the receiver was appointed in the foreclosure suit after its commencement, was made a party defendant, and suits against him were expressly authorized. The mode of establishing the lien claims, whether by suit or by presentation of claims to the receiver, rested entirely within the discretion of the trial court; and that discretion is not subject to review or question here.

[3, 4] 2. It was a settled rule of the common law that a general agreement to submit to arbitration did not oust the courts of jurisdiction, and that rule has been consistently adhered to by the federal courts. Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708; Mitchell v. Dougherty, 90 Fed. 639, 33 C. C. A. 205;

9 Cyc. 511. We have no reference now to contracts making submission to arbitration a condition precedent to suit. Opposing counsel concede the general rule, but maintain that a different rule obtains in Pennsylvania, where one of the contracts was made, and in Washington, where the suit is pending, and that this court should adopt and follow the local rule. But the question is one of general law, upon which the decisions of the Supreme Court are controlling. As said by the court in Mitchell v. Dougherty, supra:

"We have not felt called upon to discuss in detail the several Pennsylvania cases which have been urged upon our attention by the learned counsel for the defendant in error. The question before us is not as to the enforcement of the contract in accordance with the law of the place where it was made, but is as to whether a court of the United States should, because of the parties' agreement in advance to abstain from invoking its jurisdiction, refuse to enforce the contract at all. Upon this question the decisions of the supreme court of the United States are controlling, and they admit of but one conclusion."

A lien foreclosure suit is no exception to this rule.

[5] 3. The court below found that the lien waivers were procured by fraud, and that finding is not questioned here. Counsel insist, however, that in such event only two courses were open to the lien claimants: They must either seek a reformation of their contracts or rescind the contracts and recover on a quantum meruit. They cannot enforce the contracts in part and rescind in part. Under the circumstances of this case we do not think that the lien claimants were driven to either reformation or rescission. The covenant not to file or claim a lien was an independent one, relating to the remedy only, and differs but little from the agreement to submit to arbitration in that respect. The latter is against public policy and void, because it attempts to oust the courts of jurisdiction, and the former, if fraudulently procured, is equally against public policy and void. It has been repeatedly held that a vendor may enforce a lien for the purchase price when a waiver of the lien has been procured by fraud, and that he is not compelled to reform or rescind the contract. The reason for the rule is:

"Fraud vitiates all contracts, and a waiver of a vendor's lien by taking other security is no waiver, when so induced. In equity, an unpaid vendor, who has not waived it, will be entitled to a lien, and no waiver obtained by fraud will be effectual to destroy the lien." Franklin v. Walker, 171 Ill. 405, 49 N. E. 556.

In Tobey v. McAllister, 9 Wis. 463, it was contended that a vendor, who had received a part of the purchase price and was attempting to enforce a vendor's lien for the balance, because induced to accept securities of no value through the fraud of the purchasers, was seeking to enforce the contract in part and rescind in part. But the court held that the rule as to rescissions in part had no application to such a case. The court below, therefore, did not err in refusing to give effect to the lien waivers.

[6] 4. Does the mere fact that material is not used in the construction of the building or delivered upon the premises defeat a claim of lien for the purchase price, where the material is especially manufac-

tured for the building under a contract with the owner and delivery is withheld at the request of the owner to suit his own purposes? One side claims that it does, the other that it does not, and each relies with confidence upon decisions of the Supreme Court of the state which, of course, are controlling here. The chief reliance of the lien claimants is Western Hardware & M. Co. v. Maryland Casualty Co., 105 Wash. 54, 177 Pac. 703, 181 Pac. 700. The plaintiff in that case delivered material to a subcontractor at a sheet metal shop in the city of Seattle. A small portion of the material was ultimately used in the school building for which it was intended; but the greater part disappeared, and was probably sold by the subcontractor. The action was upon a statutory bond given by the contractor, conditioned for the payment of all laborers, mechanics, subcontractors, and materialmen who might supply the contractor or subcontractors with provisions and supplies for the carrying on of the work. The court held that there was a complete analogy between the bonding statute and the lien statute of the state, and that the delivery at the sheet metal shop satisfied the requirements of either statute.

Holly-Mason Hardware Co. v. Nat. Surety Co., 107 Wash. 74, 180 Pac. 901, cited by the appellees, was also a bonding case, based upon the same statute and the same form of bond. There:

"The goods were ordered by the contractor in varying quantities and at different times during the progress of the work. As the orders were received, the respondent delivered the materials ordered to a common carrier, sometimes a railroad company and sometimes an express company, for transportation to the shipping station nearest the site of the building, some 2½ miles therefrom, from which place they were receipted for to the carrier by the contractor or some one on its behalf."

A portion of the material was actually delivered at the building, and a portion not. Again the court recognized the analogy between the bonding statute and the lien statute, but held that there could be no recovery for material not actually delivered at the building. Unless a distinction can be made between the delivery to a subcontractor at his shop and the delivery to a contractor at a shipping station, the two cases cannot be reconciled.

The cases are chiefly valuable, however, for their citations. In the Western Hardware Company Case the court cites with apparent approval Trammell v. Mount, 68 Tex. 210, 4 S. W. 377, 2 Am. St. Rep. 479, Evans Marble Co. v. International Trust Co., 101 Md. 210, 60 Atl. 667, 109 Am. St. Rep. 568, 4 Ann. Cas. 831, Berger v. Turnblad, 98 Minn. 163, 107 N. W. 543, 116 Am. St. Rep. 353, and other cases. In Trammell v. Mount the court referred to the three different rules prevailing in different jurisdictions—one holding that a lien cannot exist unless the material has actually gone into the improvement; a second holding that a delivery at or near the building is sufficient; a third holding that neither delivery nor use in the building is essential—and said:

"We are inclined to adopt the latter view in cases where the delivery at the building is prevented by the act or direction of the owner. If he directs, for his own convenience, that the material be delivered at some other place, or, after it is prepared, and nothing is left to be done by the materialmen but

to take it to the building spot, the owner violates his contract and refuses to receive it, it seems that justice dictates that through his own conduct the owner should not defeat the lien."

In the Evans Marble Company Case a lien was sustained for cutting marble at a workshop, and a similar ruling was made for shopwork in Burger v. Turnblad.

[7, 8] It should be said, perhaps, in justice to the appellees, that the doctrine of some of the cases cited by the court, especially those from Pennsylvania, has been repudiated by the Supreme Court of Washington from the time of its organization up to its last judicial utterance. It must be conceded, however, that the exact point here presented has never been determined by the Supreme Court of the state, and it becomes the duty of this court to determine the question for itself as best it can. The language of the statute is:

"Every person performing labor upon or furnishing material to be used in the construction * * * of any * * * building * * * has a lien upon the same for the labor performed or material furnished, by each. * * *" Section 1129, Rem. & Bal. Code.

The statute does not use the term "delivered," or "delivered at the building," but the Supreme Court of the state has repeatedly held that delivery at the building is essential where the material is furnished to a contractor. The reason for the rule is that a more liberal construction of the statute would permit of the grossest fraud on the part of contractors, and is not necessary for the protection of bona fide materialmen. This reason, of course, fails where the material is sold and furnished directly to the owner. . The court below seemed to be of opinion that to allow a lien in such a case would be a fraud upon other lien claimants. But such is not the case. Every person who performs labor upon or furnishes material to be used in the construction of a building does so with full knowledge of the fact that liens may be claimed for the full value of all labor performed and all material furnished, and that there is no priority between liens because of any priority in the time of performance of labor or furnishing of materials. What difference does it make, then, to other lien claimants, whether the material is delivered at the building or stored in a warehouse? Had delivery been accepted by the owner at the warehouse, the validity of the liens could scarcely be questioned by either the owner or other lien claimants, and the fact that the material was held at warehouses or elsewhere subject to the order of the owner does not change the situation in the least.

It should be observed in this connection that the materialman cannot claim both the material and the lien. If he claims the lien, he holds the material subject to the order of the owner, and it thereby becomes subject to all liens against the property. This case differs, therefore, in two important respects from any of the cases cited from the Supreme Court: First, there was here no intervention of contractor or subcontractor; and, second, the material was prepared especially for the building, and is of little or no value for any other purpose. Under such circumstances—that is, where the materialman contracts directly with the owner, and where the material is manufactured and especially

designed for the building—the material is furnished in contemplation of law as soon as prepared and ready for delivery, and the owner should not be permitted to defeat the lien by a wrongful refusal to receive or accept the material. This construction of the statute is reasonable and just; it protects all and injures none. Tibbetts v. Moore, 23 Cal. 208; Congdon v. Kendall, 53 Neb. 282, 73 N. W. 659; McEwen v. Union Bank & Trust Co., 35 Mont. 470, 90 Pac. 359.

[9] 5. The contention that the building company is a mere agency or instrumentality of the bank, and that the lien claimants are entitled to a decree against the bank as well as against the building company, cannot be sustained. It is by no means uncommon for the officers of a bank to form a building company, to furnish quarters for the bank and for other purposes. Nor is it uncommon for the two corporations to have substantially the same officers and stockholders. But mere identify of officers and stockholders is of little moment. Oregon Short Line R. Co. v. Postal Tel. Cable Co., 111 Fed. 842, 49 C. C. A. 663; In re Watertown Paper Co. 169 Fed. 252, 94 C. C. A. 528; Foard Co. v. State of Md., 219 Fed. 827, 135 C. C. A. 497; Pittsburgh & Buffalo Co. v. Duncan, 232 Fed. 584, 146 C. C. A. 542; Corsicana Nat. Bank of Corsicana v. Johnson, 251 U. S. 68, 94, 40 Sup. Ct. 82, 64 L. Ed. 141.

[10] If there was any fraud in the organization of the building company, which is not apparent, the depositors and stockholders of the bank are the chief sufferers. The property of the bank has been conveyed to the building company, funds of the bank have been invested in the capital stock of the building company, which has proved worthless, and the bank has made other advances, receiving nothing in return. The lien claimants have had the benefit of the property conveyed and the advances made, and now insist that they are entitled to upwards of $70,000 invested in the assignment of a mortgage, improvidently perhaps, and to share with the depositors of the bank in the distribution of what little remains of its assets. The want of equity in such a claim is too apparent to require discussion.

[11] 6. The claim of vendor's lien on the part of the supervisor of banks is without merit, as such liens are unknown to the local law. Smith v. Allen, 18 Wash. 1, 50 Pac. 783, 39 L. R. A. 82, 63 Am. St. Rep. 864.

[12] The claim based on the assignment of the $600,000 mortgage is also without merit. That mortgage was executed to a naked trustee, to enable him to raise money for the building company. No advances were made under the mortgage by the trustee, or by any other person. The mortgage simply lay dormant until assigned to the bank after the lien claims had attached, and, assuming that the assignment was then authorized, it was null and void under the Constitution and laws of the state. Wash. Const. art. 12, § 6; Farmers' Loan & Trust Co. v. San Diego St. Car Co. (C. C.) 45 Fed. 518; Kemmerer et al. v. St. Louis Blast Furnace Co., 212 Fed. 63, 128 C. C. A. 519.

The $70,000 mortgage was a lien upon the two lots conveyed to the building company by the bank, at the time of the conveyance. After the failure of the bank, the bank commissioner of the state applied to the superior court of the county for authority to take an assignment of

the mortgage, and that court authorized him to take up the mortgage by assignment or otherwise, and pay therefor the amount of the principal and interest due. An assignment was taken in the name of the special deputy bank commissioner, who in turn assigned to the supervisor of banks, his successor in authority under a change in the state law. Briefly stated, the appellees contend that it was the duty of the bank to discharge and pay off this mortgage because of the warranty contained in its deed, and that when that duty was performed by the bank commissioner, as the representative of the bank, the mortgage lien was extinguished and the mortgage satisfied.

[13] We may assume for the purposes of this case that the assignment would have the effect claimed, if it was the duty of the bank commissioner to pay off and discharge the mortgage. But did any such duty devolve upon him? The building company, an insolvent concern, probably had a claim against the bank in the amount of the mortgage lien by reason of the breach of warranty; but the bank, another insolvent concern, had a claim against the building company in several times that amount. The bank commissioner for some purposes may represent the bank, but in a larger sense he is a public officer, charged with the duty of collecting the assets of insolvent banks and liquidating their debts. He cannot prefer one creditor to another; nor can he waive the right of set-off. Had he applied to the court for leave to pay off this mortgage, simply because the bank had given a warranty deed, his application would have been promptly denied. If he had discharged the mortgage, such discharge would not have been in the performance of duty, but in dereliction of duty. The rule as to the discharge of a mortgage by taking an assignment was thus stated by Chief Justice Shaw in Brown v. Lapham, 3 Cush. (Mass.) 551:

"Whether a given transaction shall be held, in legal effect, to operate as a payment and discharge, which extinguishes the mortgage, or as an assignment, which preserves and keeps it on foot, does not so much depend upon the form of words used as upon the relations subsisting between the parties advancing the money, and the party executing the transfer or release, and their relative duties. * * * If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage, and relieve the mortgaged premises of the lien, a duty in the proper performance of which others have an interest, it shall be held to be a release, and not an assignment, although in form it purports to be an assignment. When no such controlling obligation or duty exists, such an assignment shall be held to constitute an extinguishment or an assignment, according to the intent of the parties; and their respective interests in the subject will have a strong bearing upon the question of such intent."

There can be no question of intent here, because the intention to preserve the mortgage lien is conceded, and inasmuch as the bank commissioner did not take over the mortgage in the discharge of any duty he owed to the building company, the assignment did not satisfy the lien, but preserved it for the benefit of the creditors of the bank. The court, therefore, erred in denying the foreclosure of the mortgage in question.

[14] We will now refer briefly to the different lien claims in controversy. It is conceded that the Washington Brick, Lime & Sewer

Pipe Company manufactured tiling especially designed for the building to the value of $58,657.50, and that the material was shipped to Tacoma and stored ready for delivery. The appellant is entitled to a lien for that amount for the reasons heretofore stated, less a payment of $20,000 made by the building company. The appellant insists that it should be permitted to apply this payment on its unsecured claim for damages for breach of contract, but one difficulty with this contention is that at the time the payment was made there was but one account upon which it could be applied, and there is, therefore, no room for the doctrine of application of payments. The payment was made on the material first shipped, and must be applied on the lien claim. The appellant is therefore entitled to a lien in the sum of $38,657.50, with interest and counsel fees, to be fixed by the court below.

[15] The appellant Ben Olson Company claimed a lien in the sum of $30,560.86 for materials actually furnished and deposited upon the premises for installation in the building, in the further sum of $21,293.42 for materials manufactured especially for the building and delivered to the claimant by the manufacturers for use in the building, and in the sum of $2,237.80 for labor, less a payment of $12,425.57 made by the building company, and less the amount of any lien that might be established in favor of the Crane Company for materials furnished to the claimant. The court below found that the total value of all materials furnished and labor performed was $9,437.75 only, that grossly excessive amounts were included in the lien claim, and that offsets and credits exceeded the value of all material and labor furnished and performed. This finding is supported by the testimony and clearly establishes the invalidity of the lien claim. The wide discrepancy between the value of the materials actually deposited upon the premises, or actually furnished by manufacturers, and the value as laid in the lien claim, was not the result of mere inadvertence or mistake, and avoided the lien claim. Dexter Horton & Co. v. Sparkman, 2 Wash. 165, 25 Pac. 1070; Gilbert Hunt Co. v. Parry, 59 Wash. 646, 110 Pac. 541, Ann. Cas. 1912B, 225; Knibb v. Mortensen, 89 Wash. 595, 154 Pac. 1109. True, the court awarded a personal judgment in favor of the claimant for upwards of $13,000 and interest; but this award was for breach of contract, profits, and other nonlienable items. The decree denying a foreclosure of the lien must therefore be affirmed.

[16] We cannot assume the burden of fixing the amount of the claim of the Tacoma Millwork Supply Company on the record before us. Any such attempt would result in unavoidable errors, which could only be corrected by a rehearing. The case will therefore be referred to the court below for that purpose. The court will allow a lien for all material especially designed and manufactured for the building, both delivered and ready for delivery. No lien will be allowed for mere stock material, not especially designed for the building, and not delivered. No lien will be allowed for damages for breach of contract, or for profits, except such profits as are included in the contract price, where the contract price is the basis of recovery. Interest and attorney

fees will be allowed as in other cases. So much of the decree as denied a foreclosure of the $70,000 mortgage and the lien claims of the appellants Washington Brick, Lime & Sewer Pipe Company and Tacoma Millwork Supply Company is reversed.

In all other respects the decree is affirmed, with such modifications in the amounts of the personal judgments as is made necessary by the allowance of the lien claims. The case is remanded to the court below for further proceedings not inconsistent with this opinion.

### On Petitions for Rehearing.

PER CURIAM. [17] Petitions for rehearing have been filed in this case, claiming, among other things, that this court failed to fix the rank of the lien claim or claims of the appellants Tacoma Millwork Supply Company. The facts are briefly these:

On the 28th day of February, 1920, these appellants entered into three separate and distinct contracts with the building company. By the first of these they agreed to furnish the general millwork for the building for the sum of $65,000; by the second they agreed to furnish and put in place certain bank fixtures for the sum of $2,128; and by the third they agreed to put in place the millwork furnished under the first contract, and to furnish certain additional door bucks, for the sum of $31,266. If these contracts are considered separately, the appellants are clearly materialmen as to the first, and contractors as to the remaining two.

It is earnestly insisted, however, that the three contracts were entered into at the same time, and as a part of the same transaction, and must therefore be considered as a single contract for the purposes of the lien statute. This contention cannot be sustained. The contract for material was complete in itself, and the appellants did not waive the benefit of that contract by entering into other and different contracts for different classes of work or material and with different subject-matters. We so decided in affirming the decree of the court below, but to remove any room for further controversy this memorandum is filed.

In all other respects the petitions are denied.