**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| 3123 SMB LLC, individually, and as assignee, *Plaintiff-Appellant*, v. STEVEN HORN, *Defendant-Appellee.* | No. 16-55304 D.C. No. 2:14-cv-08115-DSF-FFM OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted November 15, 2017
Pasadena, California

Filed January 17, 2018

Before: Jacqueline H. Nguyen and Andrew D. Hurwitz, Circuit Judges, and Steven Paul Logan,[*] District Judge.

Opinion by Judge Nguyen;
Dissent by Judge Hurwitz

---

[*] The Honorable Steven Paul Logan, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Diversity Jurisdiction

The panel reversed the district court's dismissal for lack of subject matter jurisdiction, and remanded for the district court to consider whether there was jurisdictional manipulation or an alter ego relationship between Lincoln One Corporation and 3123 SMB LLC for purposes of establishing diversity citizenship and jurisdiction.

Under 28 U.S.C. § 1332(c)(1), for purposes of determining diversity jurisdiction, a corporation is deemed to be a citizen of the State where it was incorporated and the State where it has its principal place of business. The Supreme Court, using a nerve center test, defined "principal place of business" as "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

Lincoln One, a holding company, was formed less than one month before this lawsuit was filed, and its only act during those few weeks was to incorporate in Missouri.

The panel held that what little business Lincoln One conducted was done in Missouri; and Lincoln One and its wholly-owned subsidiary, 3123 SMB, were putative citizens of that state alone. The panel concluded that because defendant Steven Horn was a California citizen, there

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

appeared to be complete diversity between the parties. The panel further concluded, however, that there was evidence that 3123 SMB and Lincoln One were treated as alter egos, and that Lincoln One's owners manipulated the ownership structure of the real property at the center of this lawsuit in order to manufacture diversity, and these were issues that the district court did not consider. The panel, therefore, conditionally reversed the district court's jurisdictional dismissal and remanded so that the district court could consider in the first instance whether the entities were alter egos or whether there was jurisdictional manipulation that would warrant treating 3123 SMB as a California citizen.

Concerning the question of how to classify the citizenship of a holding company such as Lincoln One, the panel concluded that a recently-formed holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere.

Judge Hurwitz dissented, and would affirm the district court's dismissal based on its finding that Lincoln One's nerve center at the time the suit was filed was in California, where its shareholders and directors resided, and where the only corporate asset – as apartment complex – was located.

**COUNSEL**

David C. Knieriem (argued), Law Offices of David C. Knieriem, Clayton, Missouri, for Plaintiff-Appellant.

John Terence Lupton (argued) and George M. Lindahl, Lindahl Beck LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

For purposes of determining diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). While a corporation's state of incorporation can be determined with ease, its principal place of business often proves elusive. To simplify the jurisdictional inquiry, the Supreme Court has defined "principal place of business" to mean "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This "nerve center" is "typically . . . found at a corporation's headquarters." *Id.* at 81.

But what of a corporation that has few, if any, activities? That's the case for a holding company, which does little other than passively own other companies and supervise their management. The corporation at issue here—Lincoln One Corporation—was formed less than a month before this lawsuit was filed, and its only act during those few weeks was to incorporate. Determining Lincoln One's principal

place of business is an existentialist exercise, yet one on which its entitlement to litigate in federal court depends.

We conclude, based on the slim record before us, that what little business Lincoln One conducted was done in Missouri—its state of incorporation—making both Lincoln One and its wholly-owned subsidiary, plaintiff 3123 SMB LLC, putative citizens of that state alone. Because defendant Steven Horn is a California citizen, there appears to be complete diversity between the parties.

There is evidence, however, that 3123 SMB and Lincoln One were treated as alter egos, and that Lincoln One's owners manipulated the ownership structure of the real property at the center of this lawsuit in order to manufacture diversity—issues that the district court didn't consider. We therefore conditionally reverse the district court's jurisdictional dismissal and remand so that it may consider in the first instance whether these entities were alter egos or there was jurisdictional manipulation that would warrant treating 3123 SMB as a California citizen.

## I.

This lawsuit, which involves a claim of legal malpractice, is part of a larger dispute regarding real property indirectly controlled by Anthony Kling and his mother, Mary Kling. The property is a building located at 3115–3125 Santa Monica Boulevard in Santa Monica, California.[1]

---

[1] Anthony Kling denied that 3123 SMB was named after the Santa Monica property, testifying at his deposition that it was "just a made up name."

In 2008, the Klings and various entities associated with their family sued several defendants in Los Angeles County Superior Court, claiming that a construction project next to the Santa Monica property caused subsidence damage due to inadequate methods of construction. *See Kling v. Gabai Constr.*, No. B235367, 2012 WL 5458924, at \*1 (Cal. Ct. App. Nov. 9, 2012) (unpublished). The Kling parties, which eventually included 3123 SMB, subsequently hired Horn to represent them.[2] Horn is a resident of California.

The attorney-client relationship soured when the state court lawsuit was dismissed. According to 3123 SMB's amended complaint in the instant case, Horn proffered 27 exhibits for a "long cause binder" that allegedly "were incomplete, inadequate, and did not allow the case to be properly prepared for trial." 3123 SMB terminated Horn in October 2013. Its new counsel "attempted to augment and repair" the exhibit list that Horn had prepared. The state court refused to allow it and, finding the exhibit list inadequate, dismissed the case for failure to be brought to trial within five years. *See* Cal. Civ. Proc. Code § 583.310.

In July 2011, before Horn's representation in the state court litigation ended, 3123 SMB was organized and registered as a limited liability company with the Missouri Secretary of State. At the time, its sole member was another limited liability company, Washington LLC, which in turn was controlled entirely by Anthony Kling. 3123 SMB gained ownership of the Santa Monica property and the litigation rights in a 2012 transfer. It became a party to the

---

[2] Although the record does not disclose when this occurred, 3123 SMB alleges in parallel state court litigation that it was on or about March 14, 2011. Complaint at 4, *3123 SMB LLC v. Horn*, No. BC682318 (L.A. Cty. Super. Ct. filed Nov. 3, 2017).

state court litigation in May 2013.  *See Kling v. Hassid*, No. B261391, 2016 WL 538238, at *1 n.1 (Cal. Ct. App. Feb. 10, 2016) (unpublished).

3123 SMB's sole activity is to manage the Santa Monica property.  Because the building is uninhabitable, 3123 SMB has little business to transact other than litigation related to the property damage.  Its listed place of business is the Clayton, Missouri office of its litigation attorney, David Knieriem.  Anthony and Mary Kling are the only persons authorized to act on behalf of 3123 SMB.  It has no officers, directors, or employees.

The Klings reside in California but claim to have longstanding connections to Missouri.  Mary Kling is from St. Louis, and the Klings still have family there.  Anthony Kling goes to St. Louis "all the time"—usually a couple of times each year, but it "[d]epends on how the Cardinals are doing."  He has operated "multiple" unnamed businesses in Clayton, Missouri, where he has unspecified real and intellectual property interests.  He "regularly interact[s] with businesses [and] government entities, in . . . Missouri." However, Anthony Kling has lived in Los Angeles his entire life other than to attend school in New York, and Mary Kling has resided in Los Angeles since at least the late 1990s.

In September 2014, nearly a year after Horn's representation ended,[3] Mary Kling incorporated Lincoln One. The corporation's Missouri-based agent and corporate attorney, Alex Kanter, filed the articles of incorporation with

---

[3] California has a one-year statute of limitations for legal malpractice claims. *See* Cal. Civ. Proc. Code § 340.6(a); *Lee v. Hanley*, 354 P.3d 334, 337 (Cal. 2015).

the Missouri Secretary of State, listing his office in Clayton as Mary Kling's address.[4] Lincoln One acquired the single membership in 3123 SMB from Washington LLC. The following month, 3123 SMB filed this suit against Horn for legal malpractice.

Mary Kling is Lincoln One's president and secretary. Initially, she was the sole board member. Subsequently, Anthony Kling joined the board. He owns 75% of the corporation's shares, and Mary Kling owns the rest.

According to Anthony Kling, Lincoln One's board meetings take place annually in Clayton, although none had been held at the time of the lawsuit. Subsequently, Lincoln One held a board meeting in October 2015. Anthony Kling attended in person, and Mary Kling attended telephonically due to health issues. Lincoln One's corporate records are kept in Missouri at its attorneys' office.

Lincoln One's sole business, which it conducts at board meetings, "is to provide direction to 3123 SMB, LLC." Currently, this direction is to prosecute the lawsuits concerning the damage to the Santa Monica property. Lincoln One does not conduct business anywhere else.

At the time of this lawsuit, Lincoln One had no "fundamental daily real estate business operations." It did not directly own or manage any real estate. Its fundamental business operation was to hold a meeting each year in Clayton to approve the following year's directors and

---

[4] In Missouri, as in many other jurisdictions, a corporation's existence begins when its articles of incorporation are filed with the secretary of state. *See* Mo. Rev. Stat. § 351.075; Model Bus. Corp. Act § 2.03 (Am. Bar. Ass'n 2016).

officers and any modification to the bylaws or issuance of common stock.

The district court dismissed this action for lack of subject matter jurisdiction, concluding that California was Lincoln One's principal place of business under *Hertz*.

## II.

Our jurisdiction arises under 28 U.S.C. § 1291. We review the district court's factual findings for clear error. *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987) (citing *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir. 1985)). "The ultimate legal conclusion that the underlying facts are insufficient to establish diversity jurisdiction is subject to de novo review." *Id.*

## III.

## A.

For purposes of diversity jurisdiction, a limited liability company "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Therefore, Lincoln One's citizenship determines whether Horn and 3123 SMB are diverse. If Lincoln One's principal place of business is in California, then both sides of this dispute are citizens of the same state and the district court correctly dismissed the matter.

Under the "nerve center" test, a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the

corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Hertz*, 559 U.S. at 93. A holding company, however, is not "normal." It engages in little activity, so there is little to direct, control, or coordinate. Its purpose—holding interest in other companies, *see* 6A William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 2821 (2017)—is passive.

Only one circuit has grappled with *Hertz*'s application to a holding company. In *Johnson v. SmithKline Beecham Corp.*, the Third Circuit considered a corporation with "quite limited" activities, "consist[ing] primarily of owning its interest in [a limited liability company], holding intra-company accounts, issuing and receiving dividends, and paying taxes." 724 F.3d 337, 342, 353 (3d Cir. 2013). The three-member board of directors held quarterly and special board meetings in Wilmington, Delaware, the holding company's state of incorporation, with some members appearing telephonically. *Id.* at 342. The board alone was authorized to manage the company's activities, *id.* at 343, although there was a dispute "about the extent of the actual decision-making that occur[ed] at the meetings," *id.* at 342. Other than the board meetings, the company's presence in Wilmington was "minimal." *Id.* It sublet a 10' x 10' office there to house its books and records, and the office was "rarely visited." *Id.* at 343.

*Johnson* concluded that the holding company was a citizen solely of Delaware because its nerve center was in Wilmington, where the board meetings took place. *Id.* at 356. Acknowledging the Supreme Court's dictum that a corporation's nerve center is "normally . . . not simply an office where the corporation holds its board meetings,"

*Hertz*, 559 U.S. at 93, the Third Circuit explained why it's inapplicable to holding companies:

> [T]he kind of board meetings denigrated in *Hertz* were being considered in the context of a case involving a sprawling operating company, with extensive activities carried out by 11,230 employees at facilities in 44 states. For a holding company . . . , relatively short, quarterly board meetings may well be all that is required to direct and control the company's limited work. . . . [T]he board generally conducts three tasks at each meeting: (1) it approves or corrects the minutes from the previous meeting, (2) it reviews the company's financial statements with [an] accountant . . . , and (3) it addresses any other business required to come before the meeting, such as authorizing agents to sign documents, making changes to the officers, paying a dividend, or, occasionally, restructuring the company's holdings. Generally, such business is straightforward and takes little time, yet it constitutes [the holding company's] primary activity: managing its assets. The location of board meetings is therefore a more significant jurisdictional fact here than it was in *Hertz*, and the meetings' brevity does not necessarily reflect an absence of substantive decision-making.

*Johnson*, 724 F.3d at 354 (citation and internal quotation marks omitted). The court cited "numerous post-*Hertz* [district court] cases that have determined the principal place

of business of a holding company by looking to the location in which its officers or directors meet to make high-level management decisions." *Id.* n.19.

The First Circuit applied a similar analysis in the pre-*Hertz* case of *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57 (1st Cir. 1993). Two holding companies, both incorporated in New York, formed a partnership to acquire and operate a hotel in Puerto Rico. *Id.* at 59. Each corporation's "sole function" was "to hold or administer its respective interest in [the partnership]." *Id.* at 60. They maintained corporate records and financial accounts in New York. *Id.* at 59. They made all policy decisions there as well, including the decision to invest in the partnership, the election of corporate officers, and the selection of accountants. *Id.* at 60. The day-to-day management of the partnership was delegated to an executive and assistant director. *Id.* at 59–60.

The district court concluded that both corporations had a principal place of business in Puerto Rico because they "were formed to act as owners of the [hotel]" and devoted "almost all of their corporate activity to administer their assets in the partnership." *Id.* at 60. The First Circuit reversed. It explained that "in determining a corporation's principal place of business, a district court's inquiry must focus *solely* on the business activities of the corporation whose principal place of business is at issue." *Id.* at 62–63. The partnership—not the corporations—managed the hotel's operations. Because the corporations' "sole corporate 'activities' . . . consist[ed] of holding or administering their assets in [the partnership]," their principal place of business was in New York. *Id.* at 63.

**B.**

The holding company in this case, Lincoln One, is even less active than those in *Johnson* and *Taber Partners*. Because diversity jurisdiction "depends upon the state of things at the time of the action brought," *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)), we must determine Lincoln One's principal place of business as of its 25th day of existence. In that brief time, the only business that Lincoln One conducted was to incorporate.

In the somewhat analogous context of a company that is winding down, two circuits have held that a dissolved corporation has no principal place of business for diversity purposes, and is therefore a citizen only of its state of incorporation. *See Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1071 (11th Cir. 2012) (concluding that such a rule "aligns most closely with the Supreme Court's analysis in *Hertz*"); *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 698 (3d Cir. 1995) (rejecting, pre-*Hertz*, "the notion that implicit in the statute's terms is the requirement that *all* corporations be deemed to have a principal place of business"). *But see Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 141 (2d Cir. 1991) (requiring inquiry into inactive corporation's last principal place of business).

We have not decided whether an inactive corporation must have a principal place of business. In *Co-Efficient Energy*, we found "a certain perverse logic" in the proposition that "an inactive corporation . . . is only a citizen of the state of its incorporation." 812 F.2d at 558. But we didn't need to resolve the issue because we concluded that the corporation in question was indeed active. *Id.* The corporation's director and sole shareholder "made business decisions, including the decision to contract with [the

defendant] and file this action." *Id.* The location where these decisions were made was deemed to be the corporation's principal place of business. *Id.*; *see also MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005) (concluding that the holding company was "not an 'inactive' corporation in the sense in which other circuits have used that term").

Here, in contrast, Lincoln One did not engage in any activity during its first 25 days. This lawsuit was filed by 3123 SMB, not Lincoln One. In concluding that California was Lincoln One's principal place of business, the district court appears to have conflated 3123 SMB's management of its lawsuit, which the court reasonably assumed would be directed from California, where the Klings reside, with Lincoln One's management of 3123 SMB at its annual meetings, which had not yet occurred and would take place in Missouri. Lincoln One's first board meeting was not held until a year after 3123 SMB filed this lawsuit.

*Johnson* rejected the idea that a holding company's nerve center is where the subsidiary limited liability company's management is based, because that "ignores the well-established rule that a parent corporation maintains separate citizenship from a subsidiary unless it has exerted such an overwhelming level of control over the subsidiary that the two companies do not retain separate corporate identities." *Id.* at 351; *accord Taber Partners*, 987 F.2d at 62–63; *cf. Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1120 (D.C. Cir. 1991) (refusing to impute subsidiary's citizenship to its parent even where the parent is the "alter ego" of the subsidiary and "the parent corporation is being sued solely for the acts of its completely controlled subsidiary"). We adhere to this rule as well. *See Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir.

1992) ("[T]he citizenship of a parent is distinct from its subsidiary where . . . there is no evidence of an alter ego relationship.").

The district court may have believed that an alter ego relationship exists between Lincoln One and 3123 SMB. The two entities are managed by the same two individuals utilizing the same attorneys, with no one else involved. But Anthony Kling provided unimpeached deposition testimony and sworn declaration statements that Lincoln One's only business is to provide general direction to 3123 SMB—at the moment, to continue prosecuting the property-related lawsuits—and that this direction is given exclusively at board meetings in Clayton, Missouri. To reach the conclusion that Lincoln One and 3123 SMB are alter egos, the court would need to reject this evidence, which it can't do without explicitly finding Anthony Kling incredible. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss. . . . If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." (citations omitted)).

The district court found it "completely implausible" that Lincoln One had "not taken any actions other than the single board meeting." We disagree. It's entirely plausible that Lincoln One, which doesn't do much at all, did nothing for 25 days. Its sole directive is to provide general direction to 3123 SMB, and at that time 3123 SMB had little business to transact other than litigation related to the Santa Monica

property.   Moreover, the district court's reference to the single board meeting in the context of Lincoln One's "implausible" inactivity suggests that it was examining a time frame well beyond the 25 days.   If so, it erred by "consider[ing] facts that arose after the complaint was filed in federal court."   *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008).   There may be valid reasons to doubt Anthony Kling's testimony,[5] but its substance—that Lincoln One's activity was limited to board meetings in Missouri—isn't one of them.

## C.

The question remains how to classify the citizenship of a holding company such as Lincoln One that has engaged in no activity other than incorporation.   We conclude that a recently-formed holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere.

The district court noted that Lincoln One's sole officer, Mary Kling, resided in California, and it found "no evidence that any of the operations of Lincoln One are directed, controlled, or coordinated from Missouri or anywhere else other than California."   This was so, the court explained, because Lincoln One's single board meeting in Missouri "occurred well after this case was filed."   The court's reasoning assumes both that a holding company's principal place of business is by default in the state where its officers

---

[5] It's not within our province to make credibility findings, *see, e.g.*, *Cruz v. City of Anaheim*, 765 F.3d 1076, 1080 (9th Cir. 2014), so we express no opinion on Anthony Kling's credibility.

live and that its principal place of business can change over time as the company holds a sufficient number of board meetings at its true nerve center. Neither of these assumptions withstands scrutiny.

The assumption that a holding company's principal place of business is in the state where its officers reside is problematic for several reasons. To begin with, this approach looks to the state as a whole rather than the specific place within the state from which the officer presumably directs the company's activity. The Supreme Court has cautioned that a corporation's principal place of business "is a place *within* a State. It is not the State itself."[6] *Hertz*, 559 U.S. at 93. Corporations aren't usually directed from their managers' homes. Here, there's no evidence that Mary Kling directed activity from her home as opposed to some other location in her home state.

In addition, "[a] corporation's 'nerve center' . . . is a *single* place." *Id.* (emphasis added). While that presents less of a problem in the instant case—Mary Kling was Lincoln One's only officer and director at the time—holding companies often have more than one decision-maker living in more than one state. How is a district court to choose among them? The dissent doesn't say, and its rule would be unworkable.

More generally, the connection between the state where a holding company conducts its business, on the one hand, and the states where its officers and directors reside, on the other, is tenuous. Corporations based in metropolitan areas

---

[6] The dissent overlooks this distinction in proposing a rule that a holding company's principal place of business is the *state* in which one of the directors or managers resides.

spanning multiple states, such as New York, Chicago, or Kansas City, frequently have officers residing in a neighboring state. Many holding companies incorporate and hold board meetings in sparsely populated states like Delaware and Nevada, while their board members reside elsewhere. In *Johnson*, for example, the holding company had its board meetings in Delaware, while four of its six officers and directors were based in other jurisdictions—two in Pennsylvania and two in the United Kingdom. *See* 724 F.3d at 342–43 & n.9.

Equally problematic is the assumption that a corporation's principal place of business can shift over time without any change to the corporation's structure or operation. Such an approach "invites greater litigation and can lead to strange results." *Hertz*, 559 U.S. at 94. Although here the corporate subsidiary is the plaintiff, in many cases it will be the defendant and, as such, unable to choose the lawsuit's timing. In those cases, the district court's subject matter jurisdiction would turn on happenstance. If the holding company or its subsidiary were sued before there were sufficient board meetings to establish a principal place of business, the residence of one or more officers or directors would determine its citizenship.

Prior to *Hertz*, when determining a corporation's principal place of business, the circuits applied multiple overlapping tests that often lacked precision. *See id.* at 91–92 (describing the "growing complexity" in this area of the law). The Supreme Court chose the nerve center test over the various competing tests in large part due to its "administrative simplicity." *Id.* at 94. Complex jurisdictional tests waste resources by encouraging gamesmanship and costly appeals while discouraging litigation of a dispute's merits. *Id.* Simple jurisdictional

rules, in contrast, benefit both courts and litigants. Courts, which have an independent obligation to ensure that subject-matter jurisdiction exists, "can readily assure themselves of their power to hear a case." *Id.* (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Straightforward jurisdictional rules also offer greater predictability for corporations making business and investment decisions and for plaintiffs deciding whether to sue in state or federal court. *Id.* at 94–95.

A rule that forces courts to pick a nerve center from the potentially several states where corporate decision-makers reside and to determine whether there have been enough board meetings to establish a different nerve center would be difficult to administer and generate unnecessary litigation on collateral issues. In contrast, a rule presuming that from inception a holding company directs its business from the place where it holds board meetings is easy to apply. *See Johnson*, 724 F.3d at 355 ("Even while cautioning courts to identify a corporation's actual center of direction and control, *Hertz* 'place[d] primary weight upon the need for judicial administration of a jurisdictional statute to remain as simple as possible.'" (quoting *Hertz*, 559 U.S. at 80)). And the latter rule rests on sound assumptions.

Missouri, like many states, allows a corporation to specify in its bylaws the location of annual meetings and, if none is designated, provides that the meetings by default will be held at the corporation's registered office. *See* Mo. Rev. Stat. § 351.225(1); Mod. Bus. Corp. Act § 7.01(b) (Am. Bar. Ass'n 2016) (providing that corporation's "principal office" as designated in its annual report is location of annual meetings if not otherwise specified); *see also, e.g.*, Cal. Corp. Code § 600(a); N.Y. Bus. Corp. Law § 602(a). Here, Lincoln One's registered office is in Clayton, Missouri.

There's no evidence that its bylaws prescribe that the annual meetings be held elsewhere, and Anthony Kling proffered uncontradicted testimony that they are in fact held in Clayton. Given the expectation that, absent evidence to the contrary, a corporation holds its annual meetings at its registered office, such meetings need not actually take place in order to establish the corporation's principal place of business there.[7]

## D.

At the same time, courts must be alert to the possibility of jurisdictional manipulation.[8]  *See Hertz*, 559 U.S. at 97. There is evidence in the record here from which such an inference could be made.  Lincoln One was incorporated

---

[7] The dissent would hold otherwise because "[t]he inquiry focuses on the location of the corporate nerve center when the suit is filed, not on future, hypothetical actions."  Dissent at 25.  If a holding company's board meets once per year in December, what difference does it make if the board has already met when the company is sued in January?  Either way, no business will be conducted over the next 11 months and, as the dissent points out, the shareholders can easily change the meeting place during that time.  Nor are we relying on "formalism."  Dissent at 25  Anthony Kling testified that Lincoln One's board meets in Clayton, and the corporate documents merely provide additional evidence of that.

[8] The dissent's criticism in this regard is essentially a critique of *Hertz*, which directs courts to take remedial action "if the record reveals attempts at manipulation."  559 U.S. at 97.  Moreover, this criticism is unfounded unless one assumes—as we do not—that the use of holding companies to manufacture diversity jurisdiction is widespread.  Finally, the dissent's proposed rule would not reduce jurisdictional litigation. Rather, it would encourage such litigation whenever recently-formed holding companies are involved—even corporations formed for legitimate purposes whose directors genuinely intend to hold meetings outside their home states.

roughly one month before this suit was filed, near the end of the statute of limitations. Prior to that time, 3123 SMB was a California citizen,[9] precluding diversity jurisdiction. Lincoln One's incorporation and acquisition of 3123 SMB rendered the parties nominally diverse just in time to file this lawsuit in federal court. Subsequently, 3123 SMB brought separate claims arising from the same conduct—Horn's alleged professional mistakes—in parallel state court litigation.

However, the record also contains evidence suggesting that Lincoln One incorporated in Missouri for legitimate reasons. The Klings have deep ties to the state, and their attorneys reside there. And there's nothing inherently problematic about a holding company and its subsidiary having the same officers. *See* 6A Fletcher, *supra*, § 2821 (citing *Haskell v. McClintic-Marshall Co.*, 289 F. 405, 413 (9th Cir. 1923)). On remand, the district court may consider whether there has been jurisdictional manipulation. If so, it should "take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Hertz*, 559 U.S. at 97.

## IV.

Anthony Kling testified that Lincoln One holds its board meetings in Clayton, Missouri. Whether that's true is a matter of credibility to be determined by the district court. The fact that Lincoln One had not yet held a board meeting

---

[9] Before Lincoln One assumed control, 3123 SMB's sole member was Washington LLC, which was controlled entirely by Anthony Kling, a California citizen. *See Johnson*, 437 F.3d at 899.

does not in and of itself have jurisdictional significance if the meeting's location had already been determined.

Because 3123 SMB presented evidence that Lincoln One's minimal activity was directed from board meetings in Missouri, that state appears to be the corporation's principal place of business. Therefore, we reverse the district court's jurisdictional dismissal. Our reversal is conditional. On remand, the district court is free to consider whether there is jurisdictional manipulation or an alter ego relationship between Lincoln One and 3123 SMB.

**REVERSED and REMANDED.**

HURWITZ, Circuit Judge, dissenting:

The Court today holds that a corporation's principal place of business was located in a state in which the company had done absolutely no business at the time this lawsuit was filed. Although identifying the principal place of business of a holding company is not always an easy task, the "nerve center" cannot be in a state where the corporate EEG is flat. The district court correctly found that Lincoln One's nerve center at the time this suit was filed was in California, where its shareholders and directors resided, and where the only corporate asset—an apartment complex—was located. I therefore respectfully dissent.

I.

I start, as does the majority, with the basics. For purposes of diversity jurisdiction, a corporation is a citizen both of its state of incorporation and the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A

party invoking federal jurisdiction bears the burden of establishing it.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [our] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted).

It is undisputed that Lincoln One was incorporated in Missouri.  But, that is only half the battle.  It is also plaintiff's burden to establish the location of the corporation's principal place of business, or its "nerve center."  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

Plaintiff failed to meet that burden.  Rather, the district court found that Lincoln One's principal place of business was in California, a factual determination we review for clear error.  *See Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987).  That finding was not clearly erroneous.  Plaintiff conceded that there had been no corporate activity in Missouri between the day Lincoln One was incorporated and the filing of this suit.  The district court found that Mary Kling, Lincoln One's sole officer, is a California resident who had not travelled to Missouri during that period, and found implausible plaintiff's assertion that the corporation had undertaken no actions anywhere in the critical time frame.  And, because "the jurisdiction of the court depends upon the state of things at the time of the action brought," *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)), we cannot consider later activity, such as the board meeting held by Lincoln One in Missouri.

Indeed, even adopting the majority's premise that Lincoln One was completely inactive during the relevant period, the district court's dismissal must be affirmed.  A

corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92–93. Plaintiff presented absolutely no evidence that any such direction, control or coordination occurred in Missouri. Indeed, the only evidence on this issue was that Lincoln One's sole officer was a California citizen who did nothing in Missouri between the date of incorporation and the filing of this suit.

## II.

The majority relies heavily on *Johnson v. SmithKline Beecham Corp.* for the proposition that the nerve center of a holding company is where its board meetings are supposed to take place. 724 F.3d 337 (3d Cir. 2013). But in *Johnson*, the holding company actually held quarterly board meetings in Delaware before the suit was filed. *Id.* at 353–54. Thus, *Johnson* does not stand for the proposition that the state of incorporation is presumptively the principal place of business of a holding company even if no activity has occurred there. Rather, it faithfully applies *Hertz* by identifying the location in which the corporate "officers or directors meet to make high-level management decisions." *Id.* at 354 n.19.

The majority's reliance on *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57 (1st Cir. 1993), is similarly misplaced. In *Taber*, during five years before the filing of the lawsuit, a "'control-group' of twelve individuals" maintained the holding company's "corporate records and financial accounts" in New York. *Id.* at 60. There is no evidence here that Lincoln One's sole officer did anything at all in Missouri before the suit was filed.

The majority also relies on Missouri law, which allows a corporation to specify where its annual meetings will be

held, and Lincoln One's articles of incorporation, which specify that those meetings will occur in Clayton, Missouri. Mo. Rev. Stat. § 351.225(1). But the Supreme Court rejected this the type of formalism in *Hertz. See* 559 U.S. at 97 ("[W]e reject . . . that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). The inquiry focuses on the location of the corporate nerve center when the suit is filed, not on future, hypothetical actions. Indeed, under Missouri law, shareholders can by simple agreement change the specified location of the annual meetings, *see* Mo. Rev. Stat. § 351.225, 290, so the provision in the articles of incorporation did not assure that the meetings would take place in Clayton.

## III.

Today's decision gives rise to the very dangers of jurisdictional manipulation that *Hertz* eschews. Under the majority's approach, a newly formed corporation is entitled, in the absence of other activity, to a presumption that its state of incorporation is also its principal place of business. But, the "nerve center" of a corporation may shift over time. Thus, Lincoln One, having established diversity simply by virtue of its state of incorporation, can hereafter safely conduct its business entirely in California but still invoke the limited jurisdiction of an Article III court.

I respectfully dissent.